ALBANY,<br>Dec. 8132.<br><br>Rogers<br>v.<br>Eagle Fire Co.<br>of New-York.

---

ROGERS *vs.* THE EAGLE FIRE COMPANY OF NEW-YORK.

Where A., by a deed poll, " in consideration of the performances hereinafter mentioned," granted all his estate, real and personal, to B. in fee, *upon conditon* that B. should suffer and permit A. to remain in possession, and to use and enjoy all the said estate during his natural life, without yielding or paying any thing therefor; and that at the decease of A., the grantee should pay unto C. the sum of £100, and that during the natural life of A , the grantee should provide him with a maintenance, and in the deed was contained a clause in these words : " *and the said B. is to occupy and be in possession of my house situate at the corner of Eagle street, for which he is to allow me £60 a year during my natural life;*" and then, after some further provisions in relation to the management of the estate, the deed concludes with a clause that *from and after the decease of A.,* the grantee and his heirs shall hold and enjoy the premises by the deed given and granted, and dispose thereof to his and their own proper use ; IT WAS HELD, that the deed, *as to the house at the corner of Eagle street,* was valid and operative as a conveyance to B. for the life of A., subject to rent, with a remainder to him in fee without rent. AND IT WAS FURTHER HELD, that the deed might well be considered a *bargain and sale* under the statute of uses as to the house at the corner of Eagle street, conveying a freehold *in futuro,* the reservation of £60 a year during the life of the grantor being a sufficient consideration to raise the use.

Where a plaintiff in ejectment claims to recover under a mortgage as forfeited, it is enough that it be found by a special verdict that there is a mortgage, and that from its terms it appears that the day of payment was past at the commencement of the suit ; it is not necessary that the jury should find the non-payment of the mortgage monies.

If the facts of a case would have warranted a jury to have found *livery of seisin* under a *feoffment,* but in a special verdict only *the evidence of the fact is stated* instead of *the fact being found,* the court cannot adjudge the feoffment to be a feoffment with livery, but will award a *venire de novo.*

The same principles apply to a title to lands by possession ripened into a right under the statute of limitations ; if there has been an adverse entry and continued possession for 20 years, the facts must be found by the jury, and the evidence of the facts must not be merely stated in a special verdict.

ERROR from the supreme court. The Eagle Fire company of New York commenced an action of ejectment against Halsey Rogers for the recovery of a house and lot in the city of New-York, and on the trial of the cause in December, 1828, deduced title to the premises as follows : 1. It was admitted by the defendant that one *John Deitz* owned and possessed the premises in question on the 3d July, 1799. 2. The plaintiffs gave in evidence a deed executed by *John Deitz*, to *Abraham Buice*, bearing date 3d July, 1799, in the words following: "To all to whom these presents shall come or may concern, know ye that I, John Deitz, of the city of New-York, in consideration of the performances hereinafter mentioned, have given, granted, aliened, enfeoffed and confirmed, and by these presents do give, grant, alien, enfeoff and confirm unto my son-in-law, Abraham Buice, all my estate, both real and personal, and the reversion and reversions, remainder and remainders ; to have and to hold the said premises, and every part and parcel thereof unto the said Abraham Buice, his heirs and assigns forever. Provided always, and upon this special trust and confidence nevertheless, and upon this express condition, that he, the said Abraham Buice, his heirs, executors, administrators and assigns, shall and do permit and suffer me to be and remain in possession, and to use and enjoy all and every my said estate, both real and personal, during my natural life, without yielding or paying any thing therefor, or in respect thereof, and not otherwise. And further, that from and after my decease, the said Abraham Buice, his heirs, executors and administrators, shall well and truly pay unto Frederick Howell one hundred pounds ; and also to deliver unto the said Frederick Howell two feather beds and all my wearing apparel. And further, that during my natural life, the said Abraham Buice, his heirs, executors administrators, shall and will find and provide me with good meat and drink, washing and lodging; and the said Abraham Buice is to occupy and be in possession of my house situate at the corner of Eagle street, for which he is to allow me sixty pounds a year during my natural life. And further, I am to assist the said Abraham Buice in repairing the buildings. And further, I do hereby promise that I will pay and discharge all debts and

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

incumbrances on my said estate, except three hundred and forty-five pounds, which is to be paid out of my estate, for which I am to allow the said Abraham Buice interest after my debts are paid ; and that from and after my decease, he, the said Abraham Buice, his heirs, executors, administrators or assigns shall, or lawfully may have, hold and enjoy the premises hereby granted, and every part and parcel thereof, and dispose thereof, and convert the same to his and their own proper use and behoof, as he or they shall think fit. In witness," &c.    3.  The plaintiffs gave in evidence a deed from *Abraham Buice* to *Peter Crawbuck*, bearing date 11th July, 1803, whereby, for the consideration of £1600, the grantor bargained and sold to the grantee in fee two lots of ground situate in the city of New York, distinguished as numbers 78 and 79 on a certain map in the deed described, reciting that the said two lots had been conveyed by *John Deitz* as part of his real estate to the grantor, and which deed contained covenants of seisin and for further assurances. 4.  A *mortgage* from *Peter Crawbuck* to the plaintiffs, bearing date 19th June, 1816, conveying one of the lots described in the last preceding deed, for the purpose of securing the payment of the sum of $4000 on or before the 1st January, 1817.    5.  The plaintiffs proved that the premises described in, and conveyed by the mortgage executed by Crawbuck, are the same premises mentioned in the paragraph of the deed first above set forth from *Deitz* to *Buice* in these words : "and the said Abraham Buice is to occupy and be in possession of *my house, situate at the corner of Eagle street*." They further proved that *Buice* resided on the premises 3 or 4 years ; that Deitz lived a portion of that time with him ; that Buice was dead ; that *Crawbuck* purchased the premises in question about a year or two years after the death of Deitz, and built a three story house on the premises, and that one Stuart, a son-in-law of Crawbuck, lived in the house when he was dispossessed.  That at the time when Stuart was dispossessed, one D. Brooks, who occupied a part of the house under Stuart, was also dispossessed ; that Brooks afterwards took a lease of the house from an agent of one *Frederick Howell*, who was lessor of the plaintiff in a former suit, and that a suit for the mesne profits was commenced against Brooks, which

was still pending. It was further shewn, that in 1820, the father of D. Brooks hired the premises in question of Craw-buck; that in 1825 he took a lease of the premises from the agent of *Frederick Howell*, and soon after became the ten-ant of the *defendant*, and died in possession in January, 1827. It was admitted that the defendant was in possess-ion at the commencement of the suit.

The defendant then gave in evidence the *last will* and tes-tament of *John Deitz*, executed in due form of law to pass real estate, bearing date 26th December, 1798, whereby the testator, after giving a small pecuniary legacy to a friend, and devising a tract of land in Kentucky to another, devised all the rest, residue and remainder of his real and personal estate to his nephew, *Frederick Howell*. The defendant further gave in evidence a deed from Frederick Howell to the defendant, bearing date the 29th June, 1825, whereby, for the consider-ation of $1000, the grantor conveyed to the grantee lots num-ber 78 and 79, being the same lots above mentioned as con-veyed by Buice to Crawbuck. On this evidence a verdict was taken for the plaintiff, subject to the opinion of the su-preme court on a case to be made; either party to have leave to turn the same into a special verdict or bill of exceptions.

The cause was argued in the supreme court by

*George Wood & Peter A. Jay*, for the plaintiffs.

*Samuel A. Talcott*, for the defendant.

The following opinion was delivered :

By Mr. Justice NELSON. The deed from *Deitz* to *Buice*, in relation to premises other than those now in question, was examined by the chief justice in *Jackson* v. *Delancey*, 4 *Cowen*, 427, and was considered by him inoperative as a bargain and sale for the want of a pecuniary consideration; as a covenant, to stand seized for the want of consideration of blood or mar-riage; and as a common law conveyance, being an attempt to convey a freehold *in futuro*. The principal ground upon which the decision upon the deed in that case is put, is the

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

want of a pecuniary consideration. If there had been a pe=
cuniary or other valuable consideration, it might, I think,
have been sustained as a bargain and sale within establish=
ed principles.

While uses were the subject of exclusive equity jurisdic-
tion, and before the statute, they might be limited over upon
the happening of future events to an indefinite extent, *Ba-
con's Reading on the Stat. Uses*, 18, *n*. 130 ; 210, *n*. 131, 226;
*Cruise, tit.* 14, *ch.* 5, § 16 ; and a use might be limited after
a fee, or might be created *in futuro* without any preceding
estate. 2 *Black. Comm.* 330. *Cruise, tit.* 14, *chap.* 5, § 16.
4 *Kent's Comm.* 287. The statute of uses having annexed
the possession to the use, the courts were at first inclined to
apply the rules of the common law concerning the convey-
ances of real estate to this new conveyance, and decided in
opposition to the strict doctrine of uses, that limitations of
uses in remainder should be void in those cases where com-
mon law remainders would be, for the reason to have per-
mitted future uses to take effect after as before the statute,
would have established perpetuities. *Chudleigh's case*, 1 *Co.*
134, 138. *Bacon's Read.* 110, *n.* 130. *Cruise, tit.* 16, *ch.* 5,
§ 15. This construction was afterwards departed from;
and upon an expression in the statute, many of the limitations
which had been allowed by the court of chancery in dec-
larations of uses, before they were united to the legal estate,
were supported by courts of law. *Cruise, tit.* 23, *ch.* 5, §
16. *Mutton's case, Dyer*, 274, *B.* is said to be the first case
of a limitation of uses to arise *in futuro* without any prece-
ding estate to support them since the statute. They are
called since, as they were before the statute, *springing uses*,
and may be limited to arise within the period allowed by
law in the case of an executory devise. *Cruise, tit.* 32, *ch.*
26, § 11, 12, 13. Among other things necessary to execute a
use, there must be a person seized to the use of the person
in whom it is to be executed. 1 *Co.* 126, *a. Cruise, tit.* 11,
*ch.* 3, § 7. In a conveyance which operates by transmuta-
tion of the possession of the land, such as feoffment, fine,
&c. the use is raised out of the seisin of the grantee crea-
ted by the conveyance. A feoffment to A. in fee to the
use of B. in fee at the death of C. is good, and the use

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

would result to the feoffor until the future or springing use took effect by the death of C.    *Cruise, tit.* 11, *ch.* 4, § 12, 13, 14.    4 *Kent's Comm.* 292.    12 *Com. Law R.* 359.    In a conveyance which operates by way of transmutation of the use, such as bargain and sale, and covenant to stand seized, the future use is raised out of the bargainor or covenantor. *Cruise, tit.* 16, *ch.* 5, § 23.    *Kent's Comm.* 293.    A person may covenant to stand seized, or bargain and sell to the use of another at a future day, 2 *Black. Comm.* 338 ; *Bacon's Read.* 63, *note* 137 ; *Sand. on Uses,* 133 ; *Viner's Abr. tit. Uses,* 255, *note a.,* 273, 22, *note a.;* 4 *Kent's Comm.* 292; and the estate remains in the original owner until the use arises, and is then served out of the seisin of the covenanter or bargainor.    2 *Black. Comm.* 338.    4 *Kent's Comm.* 292, 3. *Cruise, tit.* 16, *ch.* 5, § 23.    *Sand. on Uses,* 133.

I assume that the deed under consideration may be considered a bargain and sale, if there was a sufficient consideration to support it, as this was not, and indeed could not be questioned upon the argument.   It in terms conveys an absolute estate in fee to Buice of all the real estate of the bargainor, with a reservation to him for life, and gives the immediate possession and occupation of the lot in question to Buice, at an annual rent of £60 during the life of the bargainor.   Whether we view the deed as to the lot in question as a bargain and sale to the use of Buice in fee after the death of the bargainor, or to be deemed to operate as an immediate conveyance in fee, taking the whole deed together, is, according to the principles above laid down, and which are I think beyond question, unimportant ; for in either case, without a consideration it would be inoperative, and with one it would be valid.   In the former case, the use would remain by implication, as it is called, in Deitz, the bargainor, and on his death would be executed in Buice as a future and springing use, and in the latter it would be executed in him immediately.   It was a maxim in equity in relation to uses, and which has been adopted by courts of law since they became the subject of common law jurisdiction, that so much of the use as the owner of the land does not dispose of remains in him ; therefore, if a person seized in fee levies a fine, or suf-

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

fers a recovery without consideration or any declaration of uses, the use results back to himself, and the statute immediately transfers the legal estate to such resulting use ; and if any particular uses are declared, so much of the old use as is not declared to be vested in some other person, results back to the original owner. There are many cases in the books illustrating these principles. See *Sand. on Uses*, 133. *Cruise, tit.* 11, *ch.* 4, § 17, 18, &c. Cruise says the same rule takes place in all conveyances which operate without transmutation of possession, as covenants to stand seized and bargains and sales where the uses arise out of the estate of the covenantor or bargainor ; for in these cases so much of the use as the covenantor or bargainor does not dispose of still remains in him as his old estate, and is usually called a use by implication. *Cruise, tit.* 11 *ch.* 5, § 28, &c. Upon a fair construction, however, of the deed, looking at all its provisions, I am of opinion the lot in question is to be deemed an exception to the general reservation for life, and amounts to an absolute conveyance in fee to Buice, without any other condition or limitation than the £60 rent during the life of the bargainor. This is, I think, the obvious intent and effect of its provisions. Out of this lot, then, no life estate was reserved except the rent, but the freehold was intended to be conveyed immediately, subject to the rent.

Was there a sufficient consideration to support the deed as a bargain and sale ? Since the statute of uses, a rent may be reserved upon a bargain and sale, because it is the land which is conveyed, and not merely the use upon which rent could not be reserved, as the bargainor could not have recourse to it for the rent by distress. 2 *Co.* 54. *Wykes* v. *Tyllerd*, 2 *Cro. Eliz.* 595. This last case is an express adjudication upon the point, and the reservation, however trifling, (twelve pence, 10 *Co.* 34, *a.* or a pepper corn, 1 *Mod.* 262, 3, 3 *Salk.* 386, 7, or a penny, 1 *Co.* 24,) is a sufficient consideration to raise an use upon a bargain and sale. *Sand. on Uses*, 341, *n.a. Cruise, tit.* 32, *ch.* 11, § 35. In England bargains and sales must be by indenture, which is an instrument signed by all parties, or there are as many parts as parties, and which are inter-

changeably signed, and the bargainee thereby becomes expressly bound to pay the rent reserved. The deed in this case is what is called a deed poll, signed only by the bargainor, and it is said to be void as a bargain and sale for want of a consideration, because the bargainee is not bound by any covenant or agreement to pay the rent reserved, and is to be distinguished from the cases of rent reserved by indenture. The facts in the case disclose that Buice took possession of this lot under the deed in the lifetime of Deitz, and that Deitz lived with him on the premises. It cannot, I think, be controverted that the possession thus taken subjected Buice to the payment of the rent in an action of assumpsit, *Goodwin* v. *Gilbert,* 9 *Mass. R.* 486, 1 *Bacon,* 178, *note, and cases there cited,* upon the principle that whoever takes an estate under a deed ought, in reason and equity, to be obliged to take it under the terms expressed in the deed. It is said by the court in *Goodwin* v. *Gilbert,* it has been long settled that an action lies for rent reserved in a deed poll; meaning, no doubt, in those instances where the same was accepted by the grantee. Before the action of assumpsit had come into general use upon simple contracts, expressed or implied, the appropriate remedy to recover rent reserved upon a deed poll or indenture without any clause of distress, was by writ of annuity ; *Fitz. N. B.* 152, 356 ; *Gilb. on Replevin,* 6 ; *Bacon's Abr.* 6 *vol.* 37, 1 *vol.* 181, (*c.*) ; or by covenant, *Woodfall's L. & T.* 23⁵ ; *Fitz. N. B.* 145, 342 ; or by action of debt, *Woodf. L. & T.* 323 ; 1 *R. L.* 438, § 16 ; or by writ of assize, where the party bringing it has once been in the seisin of the rent, 1 *Bacon's Abr.* 37 ; 6 *id.* 253, (*B*), 255, (*D*). But whether we consider the reservation of the £60 *per annum* in the deed as rent, or as a consideration for the conveyance of the estate, I think it may be recovered in an action of assumpsit upon principles well settled in this court. It is well known that the conveyances of lands in this state, in common if not universal use, are by deeds poll ; and it has been frequently adjudged that an action of assumpsit will lie to recover the consideration money expressed in them. 14 *Johns. R.* 162, 210. 20 *id.* 338. 6 *Cowen,* 445, The doctrine of the court in *Goodwin* v. *Gilbert* was recognized by Woodworth, J. in delivering the opinion of the court in

*Brown* v. *Bell*, 20 *Johns. R.* 338. Whether the considera-
tion is a sum in gross or an annual rent reserved can make
no difference, so far as the remedy by action is concerned.

It may be said that the rent reserved upon the lot in ques-
tion is only a consideration for the use and occupation of the
same during the period of time it is reserved, and that it can-
not be deemed a consideration for any interest in the land
beyond that time. It has been fully shewn that the consid-
eration sufficient to support a bargain and sale has become
purely technical, without substance or value, and of course it
is not important that courts should be over astute in the en-
forcement of the rule. A penny, a pepper corn, or red rose,
has generally been adjudged a good consideration. The
amount or value of the rent reserved, then, not being mate-
rial, the length of time for which it is reserved would seem to
be of no importance, within the spirit and meaning of the
rule. But the deed as to this lot is in effect a conveyance by
bargain and sale in fee, in consideration of the payment or
obligation to pay an annual rent of £60 for the life of the
bargainor. This is a sufficient consideration to satisfy the
technical rule of law, and upon the whole deed it is mani-
festly the intent of the bargainor to convey an estate in fee.

It is said a bargain and sale void in part is void in the
whole. This no doubt is true as a general proposition, but
the principle of the rule is not applicable to this case, if the
view I have taken of it be correct. On the ground that this
lot is an exception from the reservation of the life estate in the
deed, and that there is a sufficient consideration to support it,
the title passed immediately upon taking possession of the lot,
or accepting the deed by Buice, while the title to the residue
of the lands remained in Deitz; and within the principles
of *Fairfield* v. *Rogers*, 1 *Cro. Eliz.* 340, and which are fully
stated in *Knight's case*, 5 *Co.* 55, the deed may be viewed in
the light of two distinct conveyances: the one of the lot in
question, the other of the remainder of the lands. In that
case, the tenant in tail demised two distinct pieces of land for
21 years for separate rents; the lease as to one parcel was
void under the 32 *Henry* 8, and the only question was wheth-
er the whole lease was thereby void. It was adjudged good

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

as to one part, and void as to the other, because there being several reservations, the demise was in the nature of several leases. *Dyer*, 309. *Bacon's Abr.* 6 *vol.* 13, 14.

I have not deemed it important to examine at large the question of possession. The evidence on this point is loose and unsatisfactory. Admitting the deed to be inoperative and void, 1 think the possession taken by Buice must be deemed to be in the character of tenant to Deitz, and being such tenant, those succeeding to his interest or possession would be in under the same character. Such possession could not avail the lessors in establishing their title as against those claiming or holding under Deitz. If in possession, they would be estopped from setting it up, and it can be of no more avail to them, being out of possession.

Upon the whole, my opinion is that the lot in question is an exception from the reservation of the life estate to the grantor, and as to this lot, the deed is an immediate conveyance in fee to Buice, with the reservation of an annual rent during the life of Deitz; and that the reservation of the rent is a sufficient consideration to give effect to the deed as a bargain and sale, upon the possession being taken under it. The legal estate, therefore, became vested in Buice, under whom the lessors of the plaintiff claim. The plaintiff is therefore entitled to judgment.

Judgment was accordingly rendered for the plaintiffs; whereupon the *case* was turned into a *special verdict*, and the defendant sued out a writ of error.

The cause was argued in the court for the correction of errors by

*B. F. Butler & S. Talcott*, for the plaintiff in error.

*G. Wood & S. Boyd*, for the defendants in error.

Points presented and argued by the counsel for the plaintiff in error:

1. The plaintiff in ejectment can recover only upon a *legal* title; and in the present suit no such title was shewn in the plaintiff or his lessors.

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

2. The deed from Deitz to Buice was inoperative as a common law conveyance, and was void under the statute of uses for want of a sufficient consideration to support it as such, as well as because it attempted to create a freehold *in futuro,* by limiting a use in fee to take effect after the death of the grantor, and without any covenant for himself or his heirs or assigns.

3. The consideration, if any, upon which the *fee* was to vest in Buice, was the *" performance"* during the *life time* of Deitz of certain conditions specified in the deed, and the *jury have not found that these conditions were, in any part, performed.*

4. There was no *immediate grant* of the *fee* of the premises now in question, as supposed by the supreme court; but the *fee* of this lot, as well as of the others, depended upon the performance of other conditions than the payment of the £60 a year for the use of it during Deitz's life. The payment of the £60 a year *" to occupy and be in possession of"* the premises *during Deitz's life* was not a consideration entitling Buice to claim *the fee* of the premises *after Deitz's death ;* nor could it be recovered from him as such.

5. Even if the annual payment of £60 a year (expressly for the *" occupation and possession"* of the premises *during Deitz's life*) could be a consideration or condition upon which the *fee* was to pass to Buice *after Deitz's death,* still it could pass only on the *" performance,"* (the payment by Buice of the £60 a year,) and would not pass upon or in consequence of any act of Buice *merely rendering him liable to be sued* in case of non-performance or non-payment ; *and it is not found by the jury that he ever did perform or pay any part of it.*

6. It is not found that the mortgage under which the lessors of the plaintiff claimed was forfeited, or that any thing had become due on it at the commencement of the suit, or at any other time.

7. Rogers, the defendant below and the plaintiff in this court, shewed a good title under the will of Deitz and the deed from Howell.

8. The prior possession of Buice under the void deed, or that of those claiming under him, cannot avail against one in possession having the true title ; and that too under the same

person under whom Buice and the lessors of the plaintiff al-
so claim.

Points presented and argued by the counsel for the de-
fendant in error:

1. The deed from Deitz, the acknowledged former owner
of the premises in question to Buice, is a deed of bargain and
sale; and if it pass a fee simple estate, to take effect at a fu-
ture period, it is good for that purpose, being a deed operating
under the statute of uses.

2. The deed in respect to the premises in question in this
cause passes a present estate in fee simple, to take effect not
in expectancy, but immediately, upon the execution of the
instrument.

3. There is in the deed a valuable consideration to sup-
port it, viz. the rent of £60 a year reserved to Deitz during
his life, which is a valuable right recognized in the law, and
for the recovery of which actions would lie; also the other
acts to be done on the part of Buice the grantee, and for the
performance of which he became liable in an action of as-
sumpsit upon the acceptance of the deed, which was the
consummation of its delivery.

4. The lessors of the plaintiff acquired a title to the prem-
ises in question by twenty years adverse possession thereof
under a claim of title.

The following opinions were delivered:

By the CHANCELLOR. The right of the lessors of the plain-
tiff in this case depends upon the validity of the deed of the 3d
of July, 1799, from J. Deitz to A. Buice. If the deed was
valid, as to any part of the premises contained therein, it was
a revocation of the will of November, 1798, *pro tanto*, and no-
body but the heirs at law of the testator had any title to the
land, or the right to enter for the breach of a condition subse-
quent, even if it had been expressly found, by the special ver-
dict, that the grantee did not provide meat, drink, washing
and lodging for the grantor during his life, or pay to the neph-
ew the £100 mentioned in the deed, and that Howell en-

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

tered for the breach of those conditions. There can be no doubt that the conveyance of July, 1799, would have been good, as a deed of feoffment of the lot now in controversy if it had been accompanied with livery of seisin. It was in fact a conveyance of this lot for the life of the grantor, subject to an annual rent of £60, with a remainder to the grantee in fee, without rent; both the life estate and the remainder, however, being subject to the conditions mentioned in the deed, all of which, as to this particular lot, were conditions subsequent. If, therefore, it had appeared that the grantee and those claiming under him had been in possession for more than twenty years from the date of the deed, it probably would have been the duty of the jury to presume livery of seisin, so as to give effect to the conveyance of this lot as a feoffment at common law. See *Carroll* v. *Norwood*, 1 *Har. & Johns. R.* 174. *Biden* v. *Loveday*, 1 *Vern.* 196. *Rees* v. *Lloyd*, *Wight. R.* 123. 1 *Prop. Law, N. S.* 104. But in such cases the fact of livery of seisin must be found by the special verdict. The court cannot adjudge it to be a good feoffment merely from the finding of evidence, in a special verdict, which would have authorized the jury to find the fact presumed. In a special verdict the jury must find the facts and not the evidence of the facts; *Henderson* v. *Allen*, 1 *Hen. & Munf.* 235; and where certain evidence authorizes the jury to presume a fact, the court cannot presume the fact from a special verdict, setting out the evidence only. The rule is otherwise where a presumption of law arises from the finding of certain facts. Thus in the case of *Isack* v. *Clarke*, 1 *Roll. R.* 132, Lord Coke says, "if a deed of feoffment were given in evidence made forty years previous, if possession had gone according to the deed, although it could not be proved that livery was made, this would be good evidence for the jury; and that he would direct them to find a livery, for it should be presumed." But if the jury found all these matters specially, the court could not adjudge this to be a good feoffment without livery. In such a case, if all the evidence necessary to presume the fact is found by the special verdict, but the verdict is imperfect in not finding the fact itself, which ought to have been presumed by the jury, a *venire de novo* may be awarded to supply the defective finding

by the jury. *See Bird* v. *Appleton*, 1 *East's R. note a.* 3 *Taunt. R.* 209. *Henderson* v. *Allens*, 1 *Hen. & Munf.* 239. But not where the evidence found by the jury is not sufficient to have authorized them to presume the fact necessary to be established. *Witham* v. *Earl of Derby*, 1 *Wils. R.* 55.

These principles are equally applicable to the claim of the lessors of the plaintiff, arising from the statute of limitations. To bar the right of the real owner by adverse possession, it is necessary that the premises should have been held adversely for the space of twenty years, by the person who seeks the benefit of the statute, or by those under whom he claims title. Although it is found that Buice was in possession of the premises, and that he conveyed to Crawbuck in July, 1803, it is not found when the latter entered under that conveyance ; neither is it found that he held adversely to the claim of the devisee, or that the possession was continued for the term of twenty years before the devisee entered under his writ of possession. If the facts of the case were sufficient to authorize the jury to find that Crawbuck entered at the date of his deed, under a claim of the title in himself, and that he and his tenants or assigns continued to hold the premises adversely for the term of twenty years, the special verdict should have been drawn up and settled in such a manner as to make it appear upon the record that the jury found the fact of such entry and adverse holding. Where a case for the opinion of the court is turned into a special verdict, every fact which the court or the jury were authorized to find from the evidence stated in the case, and which if found by the jury in a special verdict would go to support the judgment of the court, should be stated in the special verdict as having been thus found by the jury.

It was not necessary for the jury to find that the money which was secured to be paid by the mortgage was not in fact paid. If the defendant wished to defeat the title of the lessors of the plaintiff by the fact of the payment of the mortgage money, he should have established that fact by proof. It was sufficient for the jury to find the execution of the mortgage ; and as the time for the payment of the money was past, the mortgagees were entitled to enter. The payment of the mortgage money cannot be presumed against the lessor of the

plaintiff, if that fact is not found by the verdict. It cannot be necessary for the jury to find the negative of a fact, which fact is not to be presumed, except it be found by the verdict. When the existence of a debt is once established the legal presumption is that it remains due, until such presumption is rebutted, by lapse of time, or by proof of payment. I apprehend, therefore, that this judgment cannot be sustained, unless it shall appear upon examination of the law on the subject that the deed of July, 1799, was a valid conveyance, as to the lot in question, under the statute of uses. I shall therefore proceed to examine that question.

The two principal objections to this deed as a conveyance under the statute of uses are, that it attempts to convey a freehold *in futuro*, without any particular estate to support it as a remainder, and that there is *no sufficient consideration* in the deed to constitute a valid bargain and sale. If I am right in supposing that as to this lot it is a conveyance for the life of the grantor, reserving rent, with a remainder in fee without rent, the question whether a freehold *in futuro* can be conveyed by a bargain and sale, cannot arise here ; but as other members of the court may have arrived at a different conclusion as to the construction of the deed, I shall proceed to examine this question which was so fully argued by the counsel. It is admitted that a future estate may be created under the statute of uses, by virtue of a covenant to stand seized to the use of the grantee, founded upon a consideration of blood or marriage ; but it is contended that such an estate cannot be conveyed by virtue of a bargain and sale, in which there is only a pecuniary consideration. For the purpose of testing the correctness of this supposed distinction, it may be necessary to examine the nature of each species of conveyance as a trust in equity previous to the statute of uses, and the effect of the statute upon each, as a conveyance of the legal estate. The learned and able commentator on American law has so fully explained the nature of equitable uses previous to the passing of the statute, 27*th Hen.* 8*th. ch.* 10, that it is unnecessary to refer to any of the English writers on that subject. Where the use was created by a common law conveyance, or the feoff-

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

ment of a third person, operating by an actual transmutation or change of possession, as by livery of seisin, no consideration was necessary to support the use, but the feoffee holding the legal title as a mere naked trustee, held it charged with such uses as the feoffer had thought proper to direct. As the whole legal estate passed immediately to the feoffee to uses, there could be no objection that the use was to take effect *in futuro,* and there was a resulting use in the mean time to the original owner of the land. In this way the owner of the freehold estate was enabled, in equity, to create all those various species of estates which may now be created by will, under the name of executory devises. Another mode, however, of creating equitable uses, was by a simple covenant or agreement on the part of the owner of the legal estate to hold the same to such present, contingent or future uses as were specified in the contract creating the use. In this case, as the whole legal estate remained in the former owner, a court of equity would not lend its aid to enforce a mere voluntary agreement to give that estate or any part thereof to another ; and the use, therefore, would not vest in the *cestui que use,* unless the agreement by which it was created was founded either upon a pecuniary consideration or upon a natural consideration of blood or marriage. The first was called a bargain and sale, as it was in fact an agreement to sell the use, however small the consideration might be ; but as the use, founded upon the consideration of blood and marriage alone could not properly be called a sale, it received the technical name of a covenant to stand seized, which name was only used to distinguish it from a bargain and sale. This distinction, under the statute of enrolments, afterwards became very important, although the bargain and sale, previous to the statute of uses, was in fact nothing but a covenant to stand seized to the use of the bargainee. It will be seen from this examination of uses at the common law that there could not be any good reason why the same springing, contingent or future uses might not be created by a bargain and sale founded upon a valuable consideration of blood or marriage ; and there was not in fact at the time of the passing of the statute of uses any such

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

distinction as is contended for in this case. The effect of that statute was to transfer the legal title to the use ; what before was an equitable seisin of the use became an actual title to a similar interest in the land itself; and in all subsequent conveyances, which conveyances if that statute had not been passed would merely have transferred an interest in the use, the actual interest in the land itself, to the same extent, was transferred to the *cestui que use.* The statute of enrolments, however, which was passed at the same session with the statute of uses made a very important distinction between the conveyance of a use by bargain and sale and the creation of a similar use founded upon the consideration of blood or marriage ; as the one was required to be enrolled and the other not. By the statute of enrolments, 27 *Hen.* 8, *ch.* 16, it was enacted that " no manors, lands, tenements, or other hereditaments should pass, alter or change from one to another, whereby *any estate of inheritance or freehold* should be made or take effect in any person, or any use thereof be made, *by reason only of any bargain or sale thereof,* except the same bargain and sale be made by writing, indented, sealed and enrolled in one of the king's courts of record," &c. within six months.    This statute being limited in its terms to conveyances which could only operate as bargains and sales, it did not require the enrolment of a conveyance which could operate in any other way, although it might have operated as a bargain and sale if it had been duly enrolled. It did not extend to a conveyance which could operate at common law, either as a feoffment, or as a release of a reversion to the tenant in possession; although there might be a sufficient consideration expressed in such feoffment to constitute a good bargain and sale of the legal estate under the statute of uses. Neither did it extend to a deed which operated as a technical covenant to stand seized, by reason of a consideration of blood or marriage only ; or to a conveyance which was both a bargain and sale and a covenant to stand seized, by reason of a double consideration. And as the statute did not reach mere estates for years, it only requiring bargains and sales of freehold estates and of estates of inheritance to be recorded, a species of conveyance was very soon devised, by which the statute was evaded in almost every possible case.

By the common law, if a tenant was in the actual posses-
sion of the land under a lease for years, or under a valid
conveyance of any other estate in the premises, the owner
of the reversion might release to him the whole of his inter-
est in the premises or any lesser interest therein, provided
the new interest which was thus released or conveyed took
effect in possession immediately, or upon the termination of
the particular estate which the tenant previously had in the
land. The mode of conveying the estate was, therefore,
by a lease of the estate for a term of years, which was
made to operate under the statute of uses so as to be equi-
valent to an actual possession of the land under a lease at
common law, and the lessee was thereupon without any ac-
tual entry or livery of seisin in a situation to receive a re-
lease. This release conveyed to him the freehold by a
common law conveyance, which therefore need not be en-
rolled. Here, however, a difficulty sometimes occurred
which has probably given rise to the supposition that a fu-
ture interest in real estate could not be conveyed by a bar-
gain and sale, although it might be transferred by a convey-
ance which could operate as a technical covenant to stand
seized. The lease and release having become the common
mode of conveyance in England, attempts were sometimes
made, by unskilful conveyancers, to create a future estate
out of the seisin of the vendor, by this mode of conveyance.
As the release usually contained a pecuniary consideration it
would operate as a bargain and sale of the future estate if du-
ly enrolled, although it could not operate as a release to
convey such an estate at common law. But as the form of
enrolment had not been complied with in the particular
case, the conveyance was void, unless it could be made to
operate as a technical covenant to stand seized, by reason
of a consideration of blood or marriage, in which case it
was valid without enrolment. The courts therefore be-
came very astute in finding out a proper consideration to
support the informal conveyance as a covenant to stand seiz-
ed. And they have gone so far as to permit the introduction
of parol proof to show a consideration of blood or marriage to
support a conveyance not enrolled, although no other than a
pecuniary consideration appeared on the face of the deed

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

*See Doe* v. *Sherlock & Fox, Smith's Rep.* 79. I have not been able to find any case in which it has been holden that a bargain and sale enrolled, and founded upon a proper consideration, was not sufficient to pass a freehold *in futuro*, although some of the judges in this country, where the statute of enrolment was not in operation, seem to have struggled to support conveyances of that description as covenants to stand seized, where there could be no doubt as to their being valid as bargains and sales, if they could be permitted to operate in that manner. Chief Justice Parsons, in *Wallis* v. *Wallis,* 4 *Mass. R.* 136, appears to take it for granted that the conveyance in that case, although founded upon a pecuniary consideration, could not operate as a bargain and sale of a future interest, and that it was necessary to support it as a covenant to stand seized, upon the fact of relationship proved dehors the deed, although there was no pretence there that the relationship constituted any part of the actual consideration for the conveyance ; and in *Welsh* v. *Foster,* 12 *Mass. R.* 96, Jackson, justice, says in express terms that a freehold to commence *in futuro* cannot be conveyed by bargain and sale. The law has been understood otherwise in this state, although I am not aware that the question has been considered as perfectly settled. In *Jackson* v. *Dunsbagh,* 1 *Johns. Cas.* 94, Lewis, justice, held a conveyance of a freehold *in futuro,* founded upon a pecuniary consideration only, to be valid. It is true, he says it is a covenant to stand seized, which it is in fact, although, in that case, taking the first deed by itself, it was nothing but a bargain and sale. Lansing, Ch. J. by connecting the two deeds together, supported the conveyance as a covenant to stand seised, founded upon the consideration of blood, but without expressing any opinion of the effect of the first deed, which was a mere bargain and sale ; and in *Jackson,* v. *Swast,* 20 *Johns. R.* 87, Spencer, Ch. J. seems to consider the law as settled, that a deed of bargain and sale, founded upon a pecuniary consideration only, was effected to pass an estate *in futuro.* In the case of *Roe* v. *Traumer,* 2 *Wils. R.* 75, 2 *Lord Kenyon's R.* 239, *S. C.* the conveyance was by lease and release, and as nothing is said of any enrolment, it is very evident none had taken place. The release,

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.
therefore, although it might have been good as a bargain
and sale if enrolled, could only take effect as a common law
conveyance, or as a covenant to stand seized, founded on
the additional consideration of blood. The court then
would of course only consider those two questions, without
expressing any opinion as to its effect as a bargain and sale,
if it had been duly enrolled. So in *Doe* v. *Sherlock*, the
lease purported to be a conveyance of a freehold interest *in
futuro*. It could not operate as a conveyance by lease and
release, because there was no lease for a term of years to
support it. It was not enrolled, and therefore could not
operate as a bargain and sale, although there was a sufficient
consideration ; and it could not operate as a feoffment, be-
cause there could be no livery of seisin presumed, and Bushe,
Ch. J. held that it could not operate as a covenant to stand
seized, although the relationship was proved, because there
was no evidence to show that such relationship formed any
part of the actual consideration of the conveyance.

Although there does not appear to be any express adjudi-
cation on this point, I find that most, if not all of the ele-
mentary writers take it for granted that a freehold *in futuro*
may be created by a bargain and sale operating under the
statute of uses. *Barnes* lays it down as a general rule,
that a freehold may be created to commence *in futuro* by
a limitation to a use under a common law conveyance, or
under any of the conveyances which have grown out of
the statute of uses. *Barnes on Real Prop.* 246. *Burton* says
the only essential difference between a covenant to stand
seized to uses and a bargain and sale, setting aside the
external formalities required to give validity to the latter, that
is, the enrolment thereof, is the nature, of the consideration ;
and hence the deed may operate for the benefit of the dif-
ferent parties, both as a bargain and sale and a covenant
to stand seized. *Burton on Real Prop.* 45, *pl.* 145. *Cor-
nish* also takes it for granted that there is no difference
between a bargain and sale enrolled, and a covenant to stand
seized, in conveying a future freehold under the statute of
uses ; hence he concludes that a grant of lands generally
by either of these modes of conveyance, with an *habendum*
limiting a freehold to commence *in futuro*, will be valid to

convey such estate, although it could not be thus limited by any common law conveyance. *Cornish on Purch. Deeds*, 35. *Preston*, too, lays it down as a general principle that conveyances operating under the statute may create a freehold to commence *in futuro*, although no such estate could be limited in a conveyance which could only operate by the common law; and he makes no distinction between a covenant to stand seized and a bargain and sale duly enrolled, or any other conveyance by which an estate may be granted under the statute of uses. Chancellor Kent also says in express terms that a person may covenant to stand seized, or bargain and sell, to the use of another at a future day. 4 *Kent's Comm.* 2d ed. 298. As the statute of enrolments was never in force in this state, I have no doubt that at the date of the deed in question, a future freehold might be created by this conveyance operating as a bargain and sale merely, provided it was founded upon a sufficient consideration to raise a use.

The only remaining question to be considered is, whether there is any sufficient consideration to raise a use appearing upon the face of this deed, which is found by the jury to have been executed and delivered to Buice. The efficacy of a bargain and sale appears never to have depended upon the amount of the consideration; and if any pecuniary consideration whatever is expressed in the deed, it is not necessary to prove actual payment, neither will the bargainor or his heirs or devisees be permitted to show that nothing was in fact paid. In the ordinary case of a bargain and sale by a lease for years, on which to found the common law conveyance of a release by the owner of the revision, it has been held that the reservation of a pepper corn rent, to be paid, if demanded, was sufficient to raise the use. The case of *Baker* v. *Keete, Freem. Com. Law R.* 250, 2 *Mod. R.* 249, 2 *Vent.* 35, *S. C.* arose upon a common recovery; and the question was whether the reservation of a pepper corn rent, if demanded, was a sufficient consideration under the statute of uses to constitute a bargain and sale, so as to enable the lessee to take a release of the fee without actual entry. As the object of this conveyance was to make a tenant to the precipe, it followed of course that if the reservation was not sufficient to raise a use

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

by way of bargain and sale, the recovery was void, and there had been no actual entry in that case to enable the lessee to take an enlargement of his estate as upon a lease at common law. The majority of the judges there came to the conclusion that the reservation of the pepper corn rent was sufficient. If there was a sufficient consideration in that case to support the lease for years, the reservation in this case of £60 per annum for the life of the grantor, was certainly sufficient to raise a use for the whole interest in this lot. *Cruise*, in remarking upon the case of *Barker* v. *Keete*, observes that if the lease and release in that case had not been made for the purpose of suffering a common recovery, which is very highly favored in law, it would probably have been determined to be void. *Cruise on Uses*, 105. I confess, however, I can see no good reason why it should have been considered a valid bargain and sale in a case where it was intended to defeat or destroy the estate of the issue in tail contrary to the wishes of the original owners of the land, if it could not be so considered where its operation would be to carry into effect the intention of the bargainor, who had the absolute right to dispose of the estate in such manner as he might deem proper, provided he complied with the technical rules of law. There probably might have been some doubt originally as to the correctness of that decision, there being a difference of opinion among the members of the court; but if the decision could be sustained in the case of a common recovery, the object of which was to bar the issue in tail, it must be equally applicable to the case of an ordinary conveyance under the statute of uses. It is admitted that the consideration is but a mere matter of form in either case, and there could have been no doubt in that case if it had appeared that the lease was upon the consideration of a penny or a pepper corn, actually paid by the bargainee. Five shillings was the usual consideration inserted in the lease to raise the use, although the estate conveyed might be worth a million; and no consideration whatever was necessary in the release, although the sum of ten shillings was usually inserted. It was not, however, an entirely new principle which was established in the case of *Barker* v. *Keete*, for it had long before been held that a mere

nominal consideration was sufficient to raise a use. *See Reynell* v. *Peacock*, 2 *Rolle's R.* 105. And in the case of *Sutton's Hospital*, 10 *Coke Rep.* 34 *a.* it was resolved that the reservation of *twelve pence* rent was a good considera-tion to support a bargain and sale. In *Ritson's* critical ob-servations on the various and essential parts of a deed, it is said that a lease for a year upon no other consideration than reserving a pepper corn, if it be demanded, shall work as a bargain and sale, and so make the lease capable of a release; and that the reservation makes a sufficient consideration to raise an use as by bargain and sale. *Rits. Prac. Points,* 127. *Cornish*, in his notes upon the bargain and sale by lease and release, says: "I have omitted the reddendum reserving a pepper corn rent, as made superfluous by the previous con-sideration, still it may be noticed that according to the case of *Barker* v. *Keete,* the reservation of a pepper corn rent would of itself be sufficient to support the bargain and sale." He also remarks that the authority of that case, although not impeached, has been rather timidly received, and it would therefore be improper to throw the support of the instrument on that reservation. He speaks, however, in reference to the marketability of the title rather than to the validity of the bargain and sale, for he does not doubt that if the ques-tion should arise, the courts would hold themselves bound by the decision in that case. *Corn. on Pur. Deeds,* 16. In a note of *Stalman,* to his practical treatise on the doctrine of election and satisfaction, he says: "It is observable that a pecuniary consideration is not absolutely essential to the va-lidity of a bargain and sale, but that if money's worth be the consideration, it will do, and the reservation of a pepper corn rent will be sufficient to raise a use." *Stal. on Elec.* 6, *note r.* And *Sugden* also says : "It is certainly clear that a reservation of rent, even a pepper corn, is a sufficient con-sideration to support a bargain and sale." *Sugd. on Powers,* 5th *Lond. ed.* 123.

If the concurring opinions of these several legal writers are correct and may be relied upon, there can be no doubt that here was a sufficient consideration to raise a use as to the lot which is now in controversy, and the sanctioning of a dif-

ALBANY, Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

ferent rule would probably disturb many titles which have been granted by lease and release without any consideration to support the lease other than a nominal reservation of rent. I shall therefore vote for the affirmance of the decision of the supreme court.

By Mr. Senator TRACY. The difficulty which there really is in deciding this case correctly arises, I think, from the loose and unsatisfactory form in which the special verdict is made up. It might have been decided without doubt or controversy, if the fact of continued possession for twenty years under the deed from Buice to Crawbuck, which, from what is found by the verdict, is altogether probable, had been distinctly and affirmatively stated ; but it is not so stated by the jury, and we cannot without intending or presuming something which, although morally satisfactory is not legally certain, that the possession under the deed to Crawbuck did continue for 20 years uninterruptedly, and the rule at law is well settled that no intendment or presumption is to be inferred in a special verdict. 6 *Wendell,* 191. There is another fact which I have little doubt the jury might have found, and which also would have settled the whole controversy, and that is, that Buice was *enfeoffed* or had *livery* of the premises. It was a fact which the jury might have presumed from a possession of twenty years under the deed from Deitz, which purports on its face to be a feoffment ; but as there is no pretence that the verdict contains the latter fact, and as the former is not stated, in my opinion, with sufficient positiveness and precision, we are compelled to go back to the deed from Deitz to Buice for the purpose of ascertaining if by its terms it conveyed a legal estate in the premises in question. In examining this question, it is, I think, unnecessary to pursue the learning which the argument has educed on both sides of it relative to the origin, progress and principles of the doctrine of uses, or to perplex the mind with the nice discriminations of the books between the various kinds of uses, such as shifting, secondary, springing or contingent, &c. &c. to which an age, fruitful of subtleties and technical distinctions, has given birth.

For the present purpose, it is sufficient that after the statute of uses, the common conveyances of the country generally derived their force and effect from it, and were construed to a considerable degree according to the principles of the doctrine of uses which had obtained in courts of equity before uses by virtue of the statute had become subjects of the jurisdiction of courts of common law. It is to be borne in mind, however, that although the effect of the statute in transferring uses from courts of equity to courts of law was to transfer also the doctrines and principles that had prevailed in relation to them, yet, when uses had become legal estates, many of the reasons which had governed their interpretation in courts of equity ceasing really to exist, soon came to be regarded as fictitious or technical, and a strong disposition was early manifested by the judges to dispense with them so far as they could without losing sight entirely of their origin. Thus it was that the consideration for a conveyance to an use, which originally in a court of equity was required to be a sufficient one, in a moral estimation of it, got to be esteemed in courts of law as so purely technical that a penny or a pepper corn, or any other thing which had a conceivable, though no real value, would suffice ; and conveyances operating as covenants to stand seized, which originally required for their support "such weighty and interesting considerations as those of blood or marriage," have been sustained in favour of a cousin five degrees removed, and this too when there was no reason to suppose that this remote consanguinity afforded the slightest inducemement for the conveyance; and yet the necessity of the one or the other of these considerations to give force to a conveyance under the statute of uses is laid down in all the books, and held to by all the judges with as much tenacity as though a vital principle of moral justice were involved in it. Why the English legislature, during so many years that have elapsed since passing the statute of uses, or our own legislature in the long period that intervened the adoption of it and the late revision, should have allowed such an useless and unmeaning principle to remain as a snare for the ignorant and unwary, admits of the same explanation as that for the perpetuation of

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.
many other senseless but inexorable requirements of the an-
cient law ; and this is, that those who are aware of them are
indifferent, because they can guard against them, while the
same ignorance which exposes others to the mischiefs of them,
renders them incapable of seeking and applying the requisite
legislative remedies.   But the late revision of our statutes
which has done so mu :h to expunge metaphysical subtleties,
and hair drawn distinctions from our system of jurisprudence,
has for all the future disposed of the particular question, out
of which the present as well as so many other litigations
have arisen by a simple provision that all deeds of bargain
and sale shall be deemed grants, and that a grant shall take
effect so as to vest the estate intended to be conveyed from
its delivery.    *Vide* 1 *R. S.* 738, § 138, 739, § 142.   But as
this statute cannot relate back so as to give effect to the deed
in dispute, it is now to be seen if there be any inflexible rule
of the ancient law to which this deed is subjected, and which
will prevent its taking effect according to the design and
expectation of those who were the parties to it. .

It is admitted on all hands that as a feoffment, in the
common law signification of the term, it could not take ef-
fect, notwithstanding, on its face, it purports to enfeoff the
grantee, for the want of livery of seisin ; and it is likewise
conceded that it will not operate under the statute of uses
as a covenant to stand seized, technically speaking, for the
want of "the weighty consideration of blood or marriage,"
though it is expressed to be from a father-in-law to his son-
in-law ; and it is denied that it can take effect as a deed of
bargain and sale ; 1st, because it purports to convey a free-
hold *in futuro ;* and 2d, for the want of a *sufficient consid-
eration.*   In this presentation of the case, the first inquiry is,
whether the deed operates as a conveyance of a present
freehold with conditions subsequent, for the non-performance
of which the estate might be defeated, or as a conveyance
of a freehold *in futuro* upon conditions precedent, the per-
formance of which is requisite to vest it ?

The first impression on my mind produced by reading the
deed was that Deitz intended, as the granting terms at the
commencement of the deed express, to convey immediately

to Buice, his son-in-law, all his estate, and intended also at the same time to bind Buice, and to subject the estate to the condition that Buice should permit and allow him to have the use and management of all of it, except the house at the corner of Eagle street, and for this, Buice was to allow sixty pounds a year; and also to bind Buice and subject the estate for the maintenance during life, and for the payment at his death of the amount specified, to Frederick Howell; that Deitz considered this arrangement to be made as effectually, and to be as reciprocally binding as if it had been by an indenture containing exprtss covenants and executed by both. That he supposed the deed did pass the freehold to Buice immediately, must be presumed from his stipulation that Buice should *permit and suffer* him to use and enjoy the estate during his natural life, without *yielding* or *paying* any thing therefor, &c.—a stipulation certainly very unnatural, if he supposed that Buice had acquired no claim whatever to the estate till after his death, as also is the other stipulation that three hundred and forty five pounds of debts or incumbrances then charged on the estate should be paid out of it, and when paid, that *he should allow Buice interest* on the sum. This impression neither the ingenious reasonings of the defendants' counsel nor a closer examination of the deed has removed; but I acknowledge that in the progress of the argument, and subsequently, I have found more difficulties in sustaining the conveyance, as one of a present freehold than I anticipated; and as the result of my inquiries has brought me to the conclusion that a bargain and sale will convey a future as well as a present freehold, I deem it to be unnecessary to express an opinion whether the deed from its terms can be construed so as to pass a present estate in fee or not.

It is not denied that a freehold *in futuro* would not pass by a common law conveyance, for as it operated in regard to freeholds, only by transmutation of the possession, livery was an indispensable accompaniment, which of course could be made only of a present estate : but as bargain and sale was not a conveyance of the common law, but one introduced by the statute of uses, 2 *Black. Comm.* 338, and was always deemed to operate by the transmutation of the use, and not of the pos-

session, the same principle does not necessarily apply to it any more than it does to the covenant to stand seized. Indeed I am unable to discover any difference between a bargain and sale and a covenant to stand seized under the statute of uses, except the different character of the considerations required to sustain them ; in their mode of operation, and in their effect, they seem to be substantially the same. In one case the grantor or covenantor, in consideration of natural love and affection or in consideration of a marriage, &c. covenants to stand seized, &c. to the use of the covenantee, &c. ; in the other, the grantor or bargainor, in consideration of a sum of money, bargains to stand seized, &c. to the use of the bargainee, &c. In both, the uses may be either expressed or implied. In both, words (and the same words) proper for a conveyance at common law are deemed sufficient to pass the estate under the statute of uses, as the words demise and *grant* have been adjudged to amount to a bargain and sale, without other words ; *Crossing* v. *Scudmore*, 1 *Vent.* 141 ; and give and *grant* in a deed to a relation were held to create a covenant to stand seized, though the intent of the deed and of the parties appeared plainly to be that the land should pass by feoffment and livery. 3 *Levinz*, 372. *Carthew*, 307, S. C. . Looking, therefore, simply at the origin, nature and objects of these two forms of conveyance, it would seem to be a plain dictate of common sense that if a freehold in *futuro* can be transmitted by means of a covenant to stand seized, it may be equally well by a bargain and sale. But I admit that the teachings of common sense, unaided by the lights of judicial decisions, will not always guide the human mind through the mazes of the law to a legitimate and sanctioned conclusion. On the present point, however, there is no want of these aids ; for unless I am very much mistaken, the principle that a freehold *in futuro* can be conveyed by deed of bargain and sale has for its support decisions of unquestionable authority, commencing at an early day, and continued to the present time. But before referring to some of these decisions it may be well to consider a principal cause of the confusion which at first sight there seems to exist as to the principles that have distinguished in the books, cases of covenants to stand seized, technically con-

sidered, from those of bargain and sale, under the statute of uses. This cause was the provision of the statute 27 *Henry* 8, *ch.* 16, declaring that conveyances by bargain and sale should not enure to pass a freehold, unless the same be made by indenture, and enrolled within six months in one of the courts of Westminster Hall, or with the *custos rotulorum* of the county. As this statute extended only by bargain and sale, which was a creature of the statute of uses, and not to a use founded upon consideration of blood or marriage which by the statute had been converted from an equitable into a legal estate, the latter took the name of a covenant to stand seized, to distinguish it from a bargain and sale, although before the statute of enrolment the conveyance by bargain and sale was in itself nothing but a covenant to stand seized, founded on a pecuniary consideration ; and after the statute it was nothing less, except that to give it effect it was necessary that it should be enrolled. To evade the necessity of this enrolment a new form of conveyance by lease and release was invented, by which lease or *bargain and sale* is made for a year, or other short period, which, without enrolment, made the lessor or bargainor stand seized to the use of the bargainee and vested in the bargainee the use of the term for one year, and then a release of the fee was given to the bargainee, which as he was supposed to be already in possession, dispensed with the necessity of livery of seisin, and passed the freehold as effectually as a feoffment executed with all the formalities of the feudal law. The consequence of this invention and of the decisions made to sustain it was, that it soon superseded in a great measure the ancient mode of conveyance by feoffment and livery, or rather was adopted as a substitute for it ; and as no consideration had been necessary to give validity to a feoffment, it seemed unreasonable that any should be required to give validity to its substitute. It therefore was not long after its use became general, that it was decided that the rent reserved in the lease need be but a nominal sum, as a penny ; and afterwards a pepper corn was held sufficient ; and finally, and this as long back as 1678, that the reservation of a pepper corn, if *it be demanded*, constituted a good consideration for a lease for a year, so as to raise an use by bargain and sale, and

ALBANY,
Dec. 1832.

Rogers
v.
Eagle Fire Co.
of New-York.

to enable the lessee to take a release of the fee *before entry*. 10 *Coke*, 1, *case of Sutton's Hospital; Baker* v. *Keate*, 2 *Vent.* 35; *Freeman*, 250, *S. C.*; and *Cornish on Purchase Deeds, page* 16, considers this to be settled law. This dispensation of an actual consideration, and of actual entry, in connection with the decision that the lease and release might both be contained in the same instrument and executed at the same time, operated to give to this conveyance all the advantages of a feoffment with livery, and the very important additional one of being capable of conveying a freehold *in futuro*, which by feoffment and livery could not be done. But as the statute of enrolment was never considered as extending to this country, 1 *Johns. Cas.* 97, and by its terms could not operate here, the necessity of evading its requirements was never experienced, and the form of conveying by lease and release has been used in this state to a limited extent only, and of latter years scarcely at all. In its stead the form by bargain and sale has been generally resorted to, and has been, so far as my researches extend, universally regarded as possessing all the advantages, and entitled to all the benefits of the liberal constructions which courts of law have put upon the other mode of assurance.

On returning from this digression, which an examination of the statute of enrolment and its consequences has induced, to the pursuit of decisions to sustain the proposition that a freehold *in futuro* can be conveyed by bargain and sale, I must confess myself at a loss to determine why it should ever have been doubted, in as much as this mode of conveyance, having its origin in the statute of uses, was in its nature but another term for a covenant to stand seized, the great object of which was the conveyance of future estate. And if blood or marriage was suffered to constitute a consideration, as they undoubtedly have been always esteemed, it is incredible that money, which in worldly matters *valet super omnia*, should not be deemed equally potential. In 2 *Salk.* 675, we find it decided that a person may covenant to stand seized, or bargain and sell to the use of another at a future day; and in the same case, 2 *Wilson*, 75, it is stated that the whole court were clear of opinion that a man seized might covenant to stand seized

to the use of another person after the covenantor's death. Chancellor Kent, of himself high authority, says in his commentaries, 4 vol. 298, that a person may covenant to stand seized, or bargain and sell to the use of another at a future day. In *Jackson* v. *Dunsbagh*, 1 *Johns. Cas.* 95, Lewis, J. in delivering the opinion of the court says : " The rule of law that an estate of freehold cannot be made to commence *in futuro* is only applicable to common law assurances, which operate by transmutation of the possession, and does not reach conveyances under the statute of uses." And in *Jackson* v. *McKenny*, 3 *Wendell*, 235, Justice Sutherland says, " it is abundantly settled that a deed of bargain and sale founded on a pecuniary consideration to take effect *in futuro* is effectual." The latter decision, it has been asserted, was a mere dictum, but upon examination it appears to me that the principle was involved in the case, and moreover, the decision is well sustained by the authorities there cited in its support. The case of *Wallis* v. *Wallis*, 4 *Mass. R.* 135, is not by any means a decision against the proposition ; nor is it necessary to decide whether Chief Justice Parsons supposed, what it is very improbable he did, that a bargain and sale was a common law conveyance, for his decision goes no further than to assert the abstract proposition, which has never been denied, that by a common law conveyance a freehold cannot be conveyed *in futuro*. *Pray* v. *Pierce*, 7 *Mass. R.* 381, is founded entirely, so far as it affects this question, on the preceding case, and it does no more than to reiterate the same proposition. The latter decision resting for support, as it does entirely, on the expression of Chief Justice Parsons, in *Wallis* v. *Wallis*, cannot be regarded as establishing any thing beyond that expression, which is short of the proposition that a conveyance by bargain and sale cannot pass a freehold *in futuro*.

The second objection that is made against this deed taking effect as a bargain and sale is the alleged want of a sufficient consideration. But before considering this objection, I will present two principles that have had the sanction of all the sages of the law for their support, and which I think ought to have some bearing on this case, and especially on the part of it that relates to the sufficiency of the consideration. The first

of these principles is that all deeds shall be construed most favorably for the grantee, and most strongly against the grantor. *Dyer*, 261. 2 *Coke*, 35. 3 *Bos. & Pul.* 403. The second is that a deed shall never be laid aside as void, if by any construction it can be made good. *Hob.* 277. *Shep. Touchstone*, 82, 83. *Ut res magis valeat quam pereat* was one of the earliest maxims adopted by the courts in the construction of deeds, and as long ago as *Levintz*, 3 *vol.* 372, it was observed that the judges of late years have had a greater consideration for *the passing of the estate*, which is the *substance*, than *the manner how*, which is *the shadow*. And Lord Hobart remarks, " I exceedingly commend the judges that are curious and almost subtle to invent reasons and means to make acts according to the just intent of the parties, and to avoid the wrong and injury which by rigid rules might be wrought out of the act."

It cannot be denied that by the partial transfusion of the principles of equity into the courts of law on the passing of the statute of uses, a valuable consideration having been in fact the essence of a use by bargain and sale in equity, was still considered indispensable to give it effect in its legalized form : and therefore Cruise, in his treaties on uses, page 104, lays it down that no use can be raised on a bargain and sale without some pecuniary consideration. And Preston on estates, page 156, observes, " The effect of the statute of uses was to give a legal right and a legal estate, instead of an equitable one ; the consequence is that the same qualities which were proper to uses when they were fiduciary or equitable, follow them since they have become legal interests." But notwithstanding these high authorities and many others which might be cited to the same effect, it is undeniable that the principle that the same qualities were requsite for uses in their legalized as in their equitable form, has all along been regarded as rather theoretical than practical ; and when legal estates were permitted to be created by the statute of uses, the principles which had governed them whilst they were only equitable interests were treated more as forms than substances. Chancellor Kent, 4 *Com.* 465, observes, " although it has long been settled law that a consideration expressed or proved was necessary to give effect to modern conveyances to uses, yet the consideration

need not be expressed in the deed ; therefore it is sufficient for value received, without mentioning the sum ; and if any sum is mentioned, the smallest imaginable will be sufficient, the consideration being a matter of form, as respects the validity of the deed between the parties." And it seems that as soon as the conveyances by lease and release, and by bargain and sale came into general use as substitutes for the assurance by feoffment and livery they were practically regarded as participating in the quality incident to all deeds under the common law : that of evidencing by the seal alone the proof of a sufficient consideration. And it followed almost immediately after the introduction of these forms of conveyances under the statute of uses that the consideration for them which originally in courts of equity meant nothing less than a substantial equivalent, was by the courts of law attenuated not only to a shade like a pepper corn, but to the shadow of a shade like a pepper corn, *when demanded.* In *Barker* v. *Keate, Freeman's R.* 250, the reservation of a pepper corn rent on a lease for years, in connection with the word *grant,* is held to be a sufficient consideration to transfer the possession by virtue of the statute of uses, and to make the lessee capable of a release of the fee before entry. And *Ventris,* 2 *vol,* 35, says, " In an ejectment upon a special verdict the sole point was whether a lease for a year upon no other consideration than reserving a pepper corn, *if it be demanded,* shall work as a bargain and sale, so as to make the lessee capable of a release ; and it was held that it should, and that the reservation made a sufficient consideration to raise a use, as by bargain and sale." *S. C.* 2 *Mod. R.* 249. If, therefore, this case necessarily involved a decision whether by a metaphysical distinction between the *contingency* of a pepper corn and nothing—a dividing of a hair " between south and south west side," an ancient deed of a now valuable estate, made confessedly in good faith, by competent parties, and acquiesced in for many years by all interested, should be invalidated, or a senseless and useless technicality be abolished, I should be strongly tempted to the latter conclusion. But I am happy not to be in such a dilemma, or tempted with such an alternative.

The deed from Deitz to Buice, according to my construction of its terms, carries on its face evidence of sufficient consideration to sustain it as a bargain and sale ; and this, whether we consider the stipulation for the allowance of sixty pounds a year during the life of Deitz for the house at the corner of Eagle street to be in the nature of a technical reservation of rent, or what it more probably was regarded by the parties, a compensation in the form of an annuity for the whole fee.

But before examining this point, I will suggest another expression of the deed, which, in the absence of this provision for the payment of £60 a year, I should have been strongly inclined, under the circumstances of this case, to have construed so as to constitute it the evidence of sufficient consideration to support a bargain and sale. The expression to which I refer is " *in consideration of the performances herein after mentioned,*" which is found at the commencement of the deed. The word " performances," when construed in connection with the whole deed and with facts found by the verdict, may fairly, I think, be taken to mean the performances of promises or engagements made by Buice the grantee, and the circumstances connected with the transaction fortify this construction. Deitz being the father in law of Buice, wished to make a disposition of his property very common between parents and children. He had obviously two objects in view ; one was to secure for himself a support during life, and the other to secure his property to his son in law. From the nature of the arrangement and of the relation subsisting between them, Buice must have been privy to it, and we can have no moral doubt that he had promised that he would fulfil the obligations imposed on him by it. This promise, on the part of Buice, I admit, does not appear in the deed ; but if there were such a promise, whether it be in the deed or out of the deed, by writing or by words, I suppose it would constitute a consideration sufficient to sustain the deed. It is not necessary that the consideration should be mentioned in the deed, *Cruise, tit.* 32, *ch.* 9, § 23 ; nor is it necessary that any thing should have been paid or done ; a promise to pay or do is equivalent : as if a man, in consideration of so much money to be paid at a future day, bargains and sells, the use pass-

eth presently, and after the day, the party has the action for the money ; for it is a sale by the money paid presently or hereafter. *Bacon's Abr. tit. Bargain and Sale, D. Dyer,* 337. So it is sufficient consideration to support a deed of bargain and sale, that the vendee covenants, if the money be not paid, that he will stand seized to the use of the vendor. *Comyn's Dig. tit. Bargain and Sale, B.* 11. Whether this provision, by which the intention of the grantor is clearly expressed, that Buice should have the immediate possession of the corner lot, be deemed to operate as an exception to the general reservation by Deitz of the possession, use and enjoyment of all his estate, and to amount in connection with the terms of the grant before used, to an absolute conveyance in fee, charged with an annuity (on the principle of a mortgage) of £60 during the life of the grantor ; or whether it be deemed to operate as a lease to Buice during the life of Deitz, at an annual rent of £60, seems to me to come to the same thing. In the one view, the annuity is to be taken as a consideration for a present fee, and in the other the reservation of the £60 rent would operate as a demise of the premises to Buice during the life of Deitz, and then the terms of the grant first used operates as a release of the fee, it being a principle well settled, that a lease and release may be contained in the same instrument, and will have in law their respective operation, although in fact contemporaneously executed ; indeed, in this country, where the statute of enrolment never extended, conveyances by lease and release and by bargain and sale are in every essential attribute convertible terms.

The most material question to be decided in either view on this point, is whether the provision for the payment of the £60 is in such form as to create an obligation on Buice to pay it, so as to constitute a legal consideration for the conveyance. The supreme court have supposed that Buice by taking possession of the lot under the deed, affirmed the contract and subjected himself to the payment of the money in an action of assumpsit ; but to this is replied that the fact is not found by the jury that Buice did take possession *under the deed*, and if such had been the case, yet it must have been subsequent to the execution of the deed, the valid-

ity of which could not be contingent or determinable by something that occurred after its execution. Does not the expression, " in consideration of the performances hereinafter mentioned," when used by the grantor Deitz, import his having received a promise ? He uses the expression to indicate a moving inducement for him to act—that is to convey. What is this inducement ? It was not "performances," in the lexicographical meaning of the word ; that is, acts already done ; for the " hereinafter" referred .only to prospective acts. It could not be future performance itself, for this would involve the solecism of supposing the future to be already past ; it must therefore imply an existing promise of a future performance, and may, I think, be construed as equivalent in sense to the expression, " in consideration of the promise of the performances hereinafter mentioned." Such an expression by the grantor is an acknowledgment that he had received a promise from the grantee that he would perform or fulfil, which promise would of itself form a sufficient consideration to support t..e conveyance ; and whether Deitz did or did not possess the means, that is, the evidence by which such promise could be enforced against Buice, cannot affect the sufficiency of the consideration. Nor in this view is it material to consider whether the accepting the deed by Buice did or did not make him liable to an action in case of not performing ; for the promise, and not the remedy for its violation, is to be deemed the consideration, and the admission by Deitz in his deed that there was such a promise, estops him from alleging that there was not, even though no other evidence of the promise existed, and although Deitz, for want of such other evidence, could not enforce it. Possibly this reasoning may seem somewhat metaphysical, but if so, it is justified by as high authority as Lord Hobart, who commends judges " that are curious and almost subtle to invent reasons and means to make acts according to the just intent of the parties."

But whatever may be thought of this suggestion, that the expression alluded to implies a consideration, I am satisfied that the provision for the payment of £60 a year for the house is a sufficient consideration to sustain the deed. Without deciding whether Buice did or did not take possession under the

deed, or whether, if he did, this fact would be sufficient to make valid a deed which otherwise would be invalid, I have satisfied my own mind that the provision for the payment of the £60 was a sufficient consideration, even though it were not technically in the nature of a reservation of rent. The language of the provision is, " and the said Abraham Buice is to occupy and be in possession of my house, situate at the corner of Eagle street, for which he is to allow me £60 a year during my natural life." Had the deed in question, instead of being a deed poll, been in the form of an indenture and executed by both Deitz and Buice, it has not been denied that a provision or stipulation precisely in the words of the present one would have bound Buice, and therefore formed a consideration sufficient to sustain the conveyance. Now in my view, for the reasons before given, the effect of this stipulation or provision, signed by Deitz alone, is as conclusive against him as if it had been signed by both. The proposition is not conditional, that if Buice did occupy he should pay, of that if he would pay he might occupy, or that he might occupy if he would engage to pay ; but it is declaratory and affirmative that he was to occupy and to pay, and contains an admission or affirmation that Buice had agreed to occupy and pay. If this be the true construction of the provision, it is no objection that there is no other evidence of the engagement or promise. It is sufficient that he acknowledges a promise to have been made ; and a promise of future payment is equivalent as a consideration to a present payment, and it is immaterial whether this promise is contained in the same instrument or in another—whether it be by deed or by parol ; it is sufficient that it was made, and an acknowledgment of the grantor is, as against himself, sufficient proof of this fact.

But if this reasoning be deemed too subtle, the other view of this provision for the payment of the £60, by which it is to be regarded as a reservation of rent, is to my mind entirely satisfactory. It is objected to it, as a reservation of rent, that it cannot constitute a consideration to sustain the deed, inasmuch as it being by deed poll, Buice, considered in this light as lessee, has in no form covenanted to pay the rent, and that Deitz, the lessor, has no legal remedy for enforcing its pay-

ment, and certainly not until the lessee had entered under the lease. But this objection is not well founded, for Deitz had a sufficient remedy for the rent, notwithstanding its being reserved in a deed poll executed by himself alone ; and this remedy was not dependant on the fact whether Buice ever entered into possession or not, but the right to it was consummated by the execution and delivery of the deed. In 1 *Salk.* 209, and 1 *Ld. Raym.* 171, it is distinctly settled that, in an action of debt for rent upon a lease for years, the plaintiff need not set forth in his declaration any entry or occupation ; for though the defendant neither enters nor occupies, he must pay the rent, it being due by the lease, and not by the occupation ; and recently, in the case of *Williams* v. *Bosanquet,* 1 *Broad. & Bing.* it was held, after full discussion, that actual possession is not necessary to render the lessee liable under the lease to the payment of the rent, and *that an action of rent lies on the demise reserving rent,* although the lessee never entered ; for the right to the rent and the liability to pay, vest by the lease and not by the occupation. It is true, the cases cited were on leases for years, which by common law did not require *livery* as a lease for life did ; but as our statute, 1 *R. S.* 438, by express words, gives an action of debt on a demise for life or lives the same as on a demise for years, the principle of the decisions applies to the present case. It follows, then, that as Deitz could enforce by an action the payment of the £60 a year, the reservation of it formed a sufficient consideration to raise a use in him for Buice, so as to enable him to take the release or conveyance of the freehold in the same instrument.

I am therefore of opinion that the deed in question was valid as a bargain and sale, and consequently the judgment of the supreme court should be affirmed.

The court being unanimously of opinion that the judgment of the supreme court ought to be affirmed, it was accordingly *affirmed.*