Lewis, J.
The questions arising on this special verdict, are.
;1: Did Philipj the son of dost Hendrick Dunsbagh, unde r whom the lessors of the plaintiff claim, derive any title to *107 the premises in question, under the conveyance of the 27th of May, 1754. If not,
2. Did he derive any title under the articles of agreement of the same date, taken either separately, or in connection with the said conveyance, as constituting separate parts of one agreement?
The consideration in what I shall call the first deed, (as the other refers to it,) is pecuniary, in that of the second it is general, and Philip is called in the deed the son of dost.
For the plaintiff it is contended, that the two instruments must be taken in connection, and the consideration be thus by implication, as well consanguineous, as pecuniary, and that so a use will arise to Philip, to be served out of the seisin of dost, by way of a covenant to stand seised.
Whether Philip derived any interest from the first deed, considered independently of the second, and operating as a bargain and sale, or from the second deed independent of the first, or whether a covenant to stand seised can be supported by a pecuniary consideration, were points not raised for o indecisión.
For the defendant it was insisted, that the first deed created a freehold to commence in futuro, and was, therefore, inoperative ; that the two instruments ought not to be taken iii connection, the first being complete without the aid of the second ; that should they be so taken, there being an express consideration, no other can be raised by implication ; and that should they be construed as constituting a covenant to stand seised, still the use to Philip was #never [*95] executed, the seisin out of which it was to arise, having been destroyed by the mortgage to Blatner.
It is undoubtedly a rule of law, that an estate of freehold cannot be made to commence in futuro, But this rule is only applicable to those common law assurances, which operate by transmutation of possession. It does not embrace such as are effectuated by transmutation of a use, unless with warranty. It is also a rule, that in the construction of deeds, the intent of the parties shall, if possible be carried *108 into effect: the meaning of which is, that where it. shall appear to be the intent of the parties, that the lands shall pass, "the mode or form of conveyance is not material, but the intent shall be effectuated by every legal means. In the present instance, thé intent of the parties evidently was, that Philip, should have one-half of the mill and of its product,, with one-third of the farm (or the premises ill question) to be increased to one-half (in the event of his marriage) during the life of his father, with a remainder in fee in the premises, expectant on his death. If, thén, by any legal construction of these instruments, this intent can be carried into effect, it ought to be done. On the authority of the case of Taylor, ex dent. Alley v, v. Horde, (1 Burr. 69,) I think the .two instruments may be taken in connection, as forming together the several parts of one agreement.' They bear the same date, are consistent, and between the same parties, relate to the same property, and are manifestly parts of one agreement executed by different instruments. But where is the advantage to the plaintiff from such connection ? The implied consideration cannot be substituted for the express one, or be united with it. The maxim is expressum facit cessare taciturn. (Bedell’s case, 7 Rep. 40; Fox’s case, 8 Rep. 93 b. Harper’s case, 11 Rep. 24 b. Mildmay’s case, 1 Rep. 176 a.) The extent of the rule is to admit of an implied or averred consideration, only where the consideration' is general or altogether omitted, I shall consider these instruments separate, and am of opinion, that under either of them the lessors of the plaintiff derive a good title.
[*96] ^Construing the first deed as a bargain and sale, of which it certainly contains all the requisites, I am inclined to think it effective of the-intent of the parties. The operation of this species of conveyance is that the bargainor on the execution of the deed, stands seised to the use of the bargainee ; and though the statute transfers the possession to the Use, still tire bargainee is seised and possessed in such like estate as he had in the use, ~A consequence of this operation is, that a conveyance by bargain and sale to the.use of third persons is not good, because there the use is to be served out,of the *109 seisin of the bargainee, and thus a use would be raised upon a use against the rules of law which require it to be served out of a seisin at common law. But where the use arises and is served out of the seisin of the bargainor, the effect is different. To apply this distinction to the case under consideration : here is a conveyance to the bargainee to take effect at the decease of the bargainor, which creates a resulting use to the latter during life, with a vested use in remainder to the bargainee in fee, both uses being served in succession out of the seisin of the bargainor. An authority to this effect will be found in Sanders on uses and trusts, (Sanders, 133 ; see also Bacon on Uses, 63,) where it is said, that if a man bargains and sells his lands after seven years, the grant is good, and until it takes place the use results.
The next point to be examined is, whether the pecuniary consideration in the first deed, is sufficient to raise a use by way of covenant to stand seised. It has been a general opinion that no considerations but those of blood and marriage are sufficient for that purpose; this appears to me to be an error. It is true, that such is the case in England; but it has been so since the statute of enrolments(a) only, before which time, covenants to stand seised could be raised on pecuniary considerations, The intent of this statute being to restore the notoriety of conveyances, the courts of justice, to forward the views of the legislature, and to prevent evasions of the law, determined that where the consideration of a deed was pecuniary, which was of *a [*97] private or secret nature, it should not take effect as a covenant to stand seised, which did not require enrolment, but as a bargain and sale, which did. Consideration of blood, and of marriage being of a public nature, and always having sufficient notoriety attached to them, did not fall within the same reason, and therefore, were held competent to support a covenant to stand seised. (See Sanders, 434-440.) (b)
*110 The statute of enrolments was never considered as extending to this country, but has always been deemed local, on account of its reference to the courts of Westminster, and to certain officers Unknown to us. The law, therefore, must continue to be here, as it was in England previ ■ ous to that statute, when these distinctions did. not exist; and .thus the first deed will operate as a covenant , to stand seised.
The second deed is free from the objection against the first. The consideration in it being general, and it appearing on the face of the instrument, that the grantee is the son of the grantor, the consideration of blood is raised by implication, according to the authorities above cited, and the terms give and grant being sufficiently operative, this instrument may well enure as a covenant to stand seised.
The objection that the seisin out of -which the use to Philip was to be served was destroyed by the mortgage to *111 Blatner, I consider as invalid. It is founded on the supposition of its being a future, contingent or executory use, and the authority cited from Sanders, 137, relates to such only. But in the present instance, Philip had a use in esse, a vested interest in remainder which could not bg, defeated, and his father had nothing more than a seisin or possession according to his use, which was an interest for life only5 and he could part with no greater estate.in the.premises than he held. But had the use to Philip been a future, springing or- executory use, it would still be doubtful whether the mortgage to Blatner destroyed the seisin out of * which [*98] it was to be served. What species of mortgage deed it was does not appear, nor whether it was in existence and unsatisfied at the death of lost. For if it was not such a deed as operated by transmutation of possession, or by transmutation of a use with warranty, it would not work a discontinuance, and a fortiori would not destroy a seisin at common law; and if it was discharged, lost would have been re-seised according to the old use.
My opinion therefore is, that the postea be delivered, to the plaintiff.
Benson, J., concurred.

 27 Henry VIII. ,ch. 16,

, It is said by Chancellor Kent, that no use can be raised for any purpose by a conveyance to stand seised to uses in favor of a person not within the influence of the domestic considerations» and that it can only be made use of *110 among near domestic relation? for it must be founded on the consideration of bjood or. marriage. Commentaries, vol. iv. 493, and Mr. Hilliard, in his Abridgment of the American Law of Real Property, vol. 2, p. 326, pi. 38, states these to be the only considerations. The same opinion is expressed by the Chancellor in Jackson v. Sebring, 16 Johns. R. 515, 528, 529. And see Jackson v. Cadwell, 1 Cow.en, 622, per Savage, Ch. J. 643 ; also Jackson v. Delancey, 4 Cowen, 427, per Savage, Ch. J; 431. It is worthy of note., however, that all the authorities referred to in support of this position are subsequent to the statute of enrolments, 27 Henry VIII. ch. 16, and that in the .ease of Jackson v. Sebring, there was no consideration either pecuniary or from domestic relationship. The English authorities proceed upon that statute and the reason is given in Cruise (Dig. vol. 4, p. 188,'s. 12,) viz.; that a covenant to .stand seised being a conveyance of a private nature, and valid without ¡enrolment, ¡¡t #s absolutely necessary, that the consideration be either affection to a near relation or marriage; but the English statute not having been reenacted here, this reason fails in its application. See further upon this subject, Rogers v. The Eagle Fire Ins. Co., 9 Wend. 611, per Walworth, Chancellor, at p. 626.
In New York the statute of uses is abolished, but no mention is made of covenants to stand seised. The Revised Statutes (vol. 1, 738,) have given *0 all deeds of .conveyance of the inheritance or freehold the denomination of grants, and if a covenant to stand seised should be founded on the requisite considerations it would be good as a grant, 4 Kent Com. 493, and subject of .course to the general rul.es applicable to other conveyances.