## ROBERTS *vs.* ROBERTS.

An agreement by the *baron,* in contemplation of marriage, to *give* to the *feme,* his intended wife, a farm on his decease, stating that after the marriage he shall have no right to dispose of the farm except to her, will be construed into *a covenant to stand seized* to her use, although the technical terms of such an instrument, "I hereby covenant to stand seized," &c., are not used. The intent of the parties will be sought after and enforced.

A *prospective marriage* is a sufficient consideration to support such covenant, when the marriage is subsequently solemnized.

THIS was an action of *ejectment,* tried at the Oneida circuit, in October, 1838, before the Hon. PHILO GRIDLEY, one of the circuit judges.

The plaintiff claimed to recover the premises in question under a sheriff's deed dated 29th August, 1837, in pursuance of a sale by virtue of an execution issued on a judgment in his favor, against *Robert Roberts,* entered on a bond and warrant of attorney, bearing date 1st December, 1833, given to secure the payment of $1775,40, on the 1st February, 1834. The judgment was docketed 25th December, 1834. At that time Robert Roberts was the owner of the premises in question, being 40 acres of land, worth $1200.

The defendant, *Mary Roberts,* in her defence read in evidence an instrument in writing, bearing date 2d March, 1827, executed under seal by *Robert Roberts* and herself, in the words following : "This agreement is made between Robert Roberts of, &c., on the first part, and Mary Roberts of, &c., on the other part, who intends shortly to be married, that is to say : the foresaid Robert Roberts *promises,*

*covenants and agrees to give* the foresaid Mary Roberts, his intended wife, on condition that they will be lawfully married, as follows—that is to say ; first, his farm, which is situated, &c. that is, he *covenants and agrees to give* the foresaid farm, *after his decease,* to foresaid Mary Roberts to be held by her, her heirs, assigns, administrators, forever, so that he has after their marriage no right to sell, will or demise the foresaid farm but to foresaid Mary Roberts, her heirs. And also, that the foresaid Robert Roberts *covenants and agrees to give* the foresaid Mary Roberts all the foresaid conditional his personal property, that is to say, all the stock, furniture, moveable and immoveable, of what kind soever, except the sum of four hundred dollars, which he reserves for the sole purpose of leaving in his last will and testament to whomsoever he pleases ; that is to say, the foresaid Robert Roberts *gives over by agreement to the foresaid Mary Roberts, after his decease, on condition that they will be married, all his real and personal property,* except the sum of four hundred dollars, which he intends to make a will of ; and also, by this agreement, he makes void, disannuls and revokes all wills and testaments which he formerly made." The defendant proved her intermarriage with Robert Roberts after the execution of the instrument thus produced by her, on the day of its execution, and that Robert Roberts died before the commencement of this suit : all which evidence on the part of the defendant was objected to by the plaintiff as inadmissible, on the grounds : 1. That the instrument did not convey or profess to convey the legal title to the premises, but was merely an executory agreement to convey or to devise ; and 2. That it was not founded on a sufficient consideration, and was void as against creditors ; but the objection was overruled by the circuit judge, and the evidence received. The plaintiff then produced an account stated between him and Robert Roberts, at the time of the execution of the bond and warrant, consisting of four charges of $120 each, for four years, services rendered by the plaintiff for Robert Roberts, previous to 1st December, 1808, and the *interest* upon such charges up to 1st December, 1833, amounting in the whole to the sum of

$17,75,40, which was acknowledged by Robert Roberts to be due to the plaintiff; and he called a number of witnesses to prove the services, and also to prove declarations of Robert Roberts, who was the father of the plaintiff, that on his decease the plaintiff should have his farm. On the plaintiff's resting, the circuit judge ruled that to entitle the plaintiff to impeach or question the defendant's title under the marriage settlement, he was bound to show himself a creditor of Robert Roberts at the time the marriage settlement was made, having such a demand as he could and had a right to enforce ; that the demand was stale ; that the contract between the parties, if ever binding, appeared to have been an arrangement looking not for payment in money, but to a testamentary provision or devise of the farm ; that the claim of the plaintiff was not of such a character as would uphold a judgment against the rights acquired by the defendant under the deed produced by her, and that he should feel himself bound to instruct the jury to find a verdict for the defendant. The plaintiff thereupon submitted to a nonsuit, with liberty to make a case, and apply for a new trial. The defendant accordingly moved for a new trial.

*C. P. Kirkland,* for the plaintiff.

*J. A. Spencer,* for the defendant.

*By the Court,* Cowen, J. The whole case turns on the question, whether the instrument offered and received in evidence passed a legal title to the defendant. The consideration of marriage was sufficient to sustain it, as against creditors ; and if the frame of the instrument be such as to render it effectual for the end proposed, the plaintiff's judgment and purchase could not divest the defendant's title. If ineffectual, the defendant was in no condition to contest the judgment on the ground of fraud.

The object of the instrument was to carry a fee to the wife after the husband's death. It is inartificially drawn ; and if it be operative in any way, it must be as a covenant to stand seized. The only difficulty in giving it such a

character arises from the operative words; for the consideration, being a marriage to be had, is like the consideration of blood, a distinctive and controlling feature. 4 *Bart. Elem. of Conveyancing*, 636,642. 3 *Wood's Conveyancing*, 573. *Per Savage, Ch. J. in Jackson, ex dem. Howell*, v. *John*, 4 *Cowen*, 427, 430, 431. A freehold to commence *in futuro*, may be granted by this form of conveyance. *Pitfield* v. *Pearce, March*, 50. *Roe, ex dem. Wilkinson*, v. *Tranmer*, 2 *Wils*. 75. *Willes*, 682, *S. C. Wallis* v. *Wallis*, 4 *Mass. R.* 135. *Jackson, ex dem. Wood*, v. *Swart*, 20 *John*. 85. The remarks of Willis, Ch. J. in the case cited from *Wilson*, seem to embody almost every thing which it is necessary to look at, as a test of the instrument before us. I cite them from the case as reported by Wilson. The chief justice begins by stating, with marked approbation, the words of Lord Hobart, in his reports, fol. 277, where he says: " I exceedingly commend the judges that are curious and almost subtil, *astuti*, to invent reason and means to make acts according to the just *intent* of the parties, and to avoid wrong and injury which by rigid rules may be wrought out of the act." He said Lord Hobart was a very great man ; and added, " my Lord Hale, in the case of *Crossing* v. *Scudamore*, 1 *Ventr.* 141, cites and approves of this passage in Hobart. Although formerly, according to some of the old cases, the mode or form of a conveyance was held material, yet in later times, where the intent appears that the land shall pass, it has been ruled otherwise ; and certainly it is more considerable to make the intent good in passing the estate, if by any legal means it may be done, than by considering the manner of passing it, to disappoint the intent and principal thing, which was to pass the land." The case to which he thus spoke, was a conveyance of a freehold *in futuro*, expressing both a pecuniary consideration, which, standing alone, would leave it void, as being a bargain and sale ; and another of blood, upon which it might enure as a covenant to stand seized. And he concluded thus: " We are all of opinion that, in this case, there is every thing necessary to make a good and effectual covenant to stand seized to uses. *First*, here

is a deed. *Secondly*, here are apt words ; the word *grant*, alone, would have been sufficient ; but there are other words besides, which are material. *Thirdly*, the covenantor was seized in fee. *Fourthly*, here appears a plain *intent* that Wilkinson should have the land, &c. ; and *lastly*, here is a sufficient consideration," &c. Several old authorities are cited to the same effect ; and the case concludes, by saying the whole court were clear that a man seized might covenant to stand seized to the use of another person, after the covenantor's death. The same case is also very well reported in *Willes*, 682, by the title of *Doe, ex dem. Willkinson*, v. *Tranmarr*, whence it is cited, and the general reasoning approved by Spencer, C. J. in *Jackson* v. *Swart*, before cited ; and by Swft, C. J. in *Barrett* v. *French*, 1 *Conn. R.* 354. 363, *et seq.* ; and see *Milledge* v. *Lamar*, 4 *Desauss.* 617, 626, 7. So, in *Jackson, ex dem. Trowbridge*, v. *Dunsbagh*, 1 *Johns. Cas.* 91, a deed which was in terms one of bargain and sale, and expressing a pecuniary consideration, appearing by a contemporary instrument to be in fact for the consideration of blood and a future marriage, was sustained as a covenant to stand seized, and held operative as such to carry a fee *in futuro*. The same thing was held in *Jacson, ex dem. Staats*, v. *Staats*, 11 *Johns. R.* 337, 339, 351.

Marriage, as we said, is an equally good consideration with blood ; and it may be a marriage to be solemnized thereafter, which may be shown in proof to have been actually solemnized, as was done here. 7 *Bacon's Abr. Uses and Trusts*, p. 99, *Phil. ed.* 1813. Barton says : " The consideration of a marriage *to be had* will raise a use, because the present estate is in the baron ; and what is limited to the feme is only a remainder." 4 *Bart. Elem. Conveyancing*, 640. Both writers rely on what *Twisden*, J. said in *Stephens* v. *Brittredge, Sid.* 83. Barton translates Siderfin the most fully. *Cains and wife's lessee* v. *Jones*, 5 *Yerg.* 249, is a very striking illustration of this rule of construction

No man I think, can dispute, that in the case at bar, the intent of the parties was to carry a fee to the defendant af-

Roberts v. Roberts.

ter her husband's death. And here are all the requisites mentioned by Willes, C. J. before cited, except the precise operative words used in the deed to which he was speaking. But in that case, the words were not the technical ones which belong to a covenant to stand seized. When that sort of conveyance is drawn with strict formal propriety, the terms by which it is characterized are used : " I hereby covenant to stand seized" to such and such uses. 4 *Bart. Elem. of Conveyancing*, 642. This phrase was always construed to raise a use, especially when the deed expressed a consideration of blood or marriage. As the consideration is the foundation of the conveyance, no particular form of words is necessary. *Id.* Most of the questions have arisen on the ordinary words used for conveying an estate presently, such as *give, grant, sell,* &c., which have been turned into a covenant by reason of the consideration ; and thus been made to pass. a freehold to commence *in futuro,* or to pass an estate without livery of seizin, &c. *See the cases before cited from March, Wils., Yerg.* &c. and per Wilson, J. in *Habergram* v. *Vincent,* 2 *Ves. jun.* 226. Before the statute 27 Hen. VIII., 1 *R. L. of* 1813, *p.* 72, the covenant to stand seized was enforced like a use which was raised by a feoffment ; and when the statute came, it was held to execute the use in the covenantee, the same as if it had been declared by a conveyance in the more common form. *Gilb. Uses and Trusts,* 110, *Lond. ed. of* 1741. *Swift, C. J. in Barrett* v. *French,* 1 *Conn. R.* 363. The words in the conveyance before us are, in part, words of covenant *to give* and secure to the defendant the premises in question after the death of the husband, to be held by her in fee, in such a manner, that after the marriage, he could in no way dispose of the land. Now I admit there are several old cases, on which this conveyance might be considered a mere executory covenant, not reached by the statute of uses. I do not go into them particularly. There are several collected in 7 *Bacon's Abr. ed. before cited, p.* 100, which sufficiently exemplify the remarks of Willes, C. J. that the verbal form of conveyance was too much re-

garded. This is especially apparent of the case there cited from *Anderson*, 25, *case* 55. But it will be seen, by the latter cases, that it matters very little what the operative words import when taken by themselves. In *Habergram* v. *Vincent*, before cited, Wilson, J. supposed a deed by words of feoffment to a relation and his heirs ; and adds ; " It is obvious, the mode in which it was intended to do that, was by that common law conveyance called a feoffment. But the party cannot take by feoffment : then the law says, here is an agreement by deed ; the parties are relations, and that is a consideration for raising a use ; therefore, it shall be construed a covenant to stand seized to the use of the person specified, in fee, and the estate passes, not by feoffment, as the ded says, but by virtue of the statute of uses ; and, *ut res magis valeat*, &c., that instrument called a feoffment, shall operate as a covenant to stand seized, in order to support the intention." In *Jackson, ex dem. Wood*, v. *Swart*, 20 *Johns. R.* 85, the husband and wife joined in conveying the land of the former to their son, *reserving* to themselves the use for life ; and the word *reserve* was turned into a covenant to stand seized for the life of the wife. The short of the argument is, that courts will change and subvert the meaning of the operative words, in order to reach the intention. " I bargain, sell, give, enfeoff, confirm, convey, or reserve," &c. shall be read, " I covenant," &c. Surely, it is but following out the same path of argument, to say that words importing of themselves an executory contract, as here, " I covenant and agree to give" the farm, &c. shall be read, not as words of executory covenant, but of present covenant to stand seized, if the intent be plainly so. Why can they not as well be made to read as words of present conveyance and passing an estate ? The parties tell us they used them in that sense. Words of present demise are technically necessary in a lease ; yet equivalent words, and, among others, a mere covenant or agreement executory is sufficient, if on the context it appear that the parties intended to pass in interest presently. *Woodf. Land. and Ten.* 6, *Lond. ed. of* 1804.

*Bac. Abr. Leases, &c. (k). Savage, C. J. in Jackson, ex dem. Bulkley* v. *Delacroix,* 2 *Wendell,* 438, *et seq.* A subsequent clause here is more direct: " That is to say, the said Robert Roberts *gives over* by agreement to the foresaid Mary, after his decease," &c. The words here come almost literally within a series of cases. The word *give* is the aptest term of a feoffment. 2 *Black. Comm.* 310. This has been so often turned to another nature, in order to support the intent, that Wilson, J. puts it by way of illustrating the rule now prevalent, that the law will break through all form of words for such a laudable purpose. To apply his reasoning: Here we have a consideration which has been held to operate most powerfully in working a covenant to stand seized, even out of words which in themselves import the contrary. A consideration of prospective marriage is treated not merely as a good, but valuable consideration. *Cains and wife's lessee* v. *Jones, before cited.* It is quite obvious that neither party looked to any future act, in order to pass the estate ; but their intent was to make it pass by the deed they executed the day before their marriage ; and however we might have been embarrassed by words, on the authority of some of the old cases, I think we are entitled, on the more rational rule of modern times, to overlook them, and carry the plain intent of these parties into effect. In that view of the matter, the circuit judge was right ; the non-suit must stand, and a new trial be denied.

New trial denied.