FRANKLIN E. CORWIN & IRA C. CORWIN *vs.* JABEZ CORWIN.

A conveyance not founded upon a pecuniary consideration is not good as a bargain and sale.

Natural love and affection is a sufficient consideration to support a conveyance as a covenant to stand seised to uses; but the consideration of love and affection must be founded upon the relation of *blood.* A marriage between the grantee and the daughter of the grantor is not such a consideration as will support a covenant of that nature.

Where, in an action to recover the possession of land, the complaint charges, in substance, that the plaintiffs have the lawful title to the premises, this is a material allegation which the defendant is bound to deny, if he designs to put the title in issue.

It is not enough for the defendant to spread out certain portions of what may be the evidence in the cause, and rely upon that as an answer.

The defendant is at liberty, by his answer, to controvert the plaintiff's allegation of title, in express words; or to set out the existence of facts which, if true, would show that the plaintiffs had no title. By omitting to put the title in issue by a distinct and specific denial, he takes upon himself the burthen of stating facts in his answer which, taken to be true, are sufficient of themselves to show that the plaintiff has no title.

Where the grantee in a deed for lands in fee enters in the lifetime of the grantor and holds both the lands and the deed, for a period of time sufficient—if adverse—to bar an entry, in the absence of all other evidence, the character of his possession may be ascertained from the language of the deed; and if that professes to convey an absolute estate in fee, the inference is inevitable that both the entry and the possession were adverse. BARCULO, J. dissented.

When one takes as co-heir and tenant in common, by descent, he can not in an action by his co-heir, prove that the ancestor had no title.

THIS action was commenced in 1849, to recover two undivided eleventh parts of fifty acres of land, in the town of Riverhead, in Suffolk county, which the plaintiffs claimed in fee. The defendant put in an answer by which he showed that the plaintiff's right to recover depended upon the validity of a deed given July 27th. 1801, by Isaiah Tuthill, the grandfather of the defendant, to Jabez Corwin, now deceased, the father of all the parties; the plaintiffs being sons of his second wife, and the defendant the

Corwin v. Corwin.

son of his first wife, who was daughter of the said Isaiah Tuthill. The only consideration of the deed was "natural love and affection which I have and do bear unto my son-in-law, Jabez Corwin;" "and for the better maintenance and livelihood of him, the said Jabez Corwin;" and it contained a covenant of warranty. The plaintiffs demurred to the answer, on the ground that it did not contain facts sufficient to bar the action. The cause was argued at the special term for Suffolk county, October, 1849, before Mr. Justice McCoun, who at the Suffolk special term in December, 1849, delivered the following opinion:

"The rights of the plaintiffs in the lands which they seek to recover, as two of the eleven heirs at law of Jabez Corwin deceased, depend upon the efficacy of the deed from Isaiah Tuthill to Jabez Corwin, made the 27th July, 1801. If that deed took effect and passed the title to Jabez Corwin, then the plaintiffs, as two of his children, are entitled to their undivided share. If not, then the defendant is entitled to hold on the line of descent from his grandfather, the grantor in the deed, to the exclusion of the plaintiffs. The deed does not profess to be founded on any pecuniary consideration. No moneyed consideration is expressed, and none is averred or attempted to be shown. Hence the deed did not and could not take effect as a deed of bargain and sale. The consideration expressed is in these words: "For and in consideration of natural love and affection, which I have and do bear unto my son-in-law Jabez Corwin, and for the better maintenance and livelihood of him, the said Jabez Corwin." And the deed then purports to give, grant, alien and confirm the land to him in fee, and concludes with a covenant to warrant and defend the premises to him and his heirs and assigns against himself the grantor, his heirs, and against the lawful claims and demands of all persons whatsoever. The question then is whether the deed is not effectual as a covenant to stand seised to uses under our old statute, which transferred the use into an estate in possession? Natural love and affection is a sufficient consideration to support such a use; but it is contended that this can only operate in favor of a person or persons who are of the blood of the grantor or donor. The rule, however, is not confined

to those who are of the blood only ; it extends to and allows such consideration to operate in favor of those who are connected by the tie of marriage. Ch. Kent said in *Jackson* v. *Sebring*, (16 *John.* 531,) that a covenant to stand seised is a peculiar species of convey-ance, confined entirely to family connections, and founded on the tender consideration of blood or marriage. No use can be raised for any purpose in favor of a person not within the influence of that consideration—and therefore it was held that a deed to a stranger was void.

A son-in-law is not a stranger. By marriage he becomes one of the family circle, and is, therefore, within the scope of the principle on which such deeds are upheld.

The case of *Jackson* v. *Delancey*, (4 *Cowen*, 427,) is relied on by the defendant's counsel as establishing the contrary, for in that case the deed was to a son-in-law, and it was held to be inoperative and void ; but it will be seen that the deed in that case was not founded on the consideration of natural love and affection for the son-in-law, but on a very different consideration, expressed in the deed, which did not allow of its taking effect either as a bargain and sale, or as a covenant to stand seised ; and that the point now presented did not arise in that case.

It moreover appears that Jabez Corwin, the grantee, had the use, occupation and enjoyment of the premises from about the time of the date of the deed to the time of his death. He must therefore be deemed to have died seised of an estate in fee, which descended to all his children in equal parts. The demur-rer to the defendant's answer is well taken, and the plaintiffs are entitled to judgment for the two elevenths of the property as claimed by them."

Judgment was accordingly entered for the plaintiffs at the special term, and the defendant appealed to the general term.

*Wm. M. Allen*, for the plaintiffs. I. It is contended that the answer, instead of showing a defense, admits a perfect right in the plaintiffs to recover, for many reasons. (1.) The answer admits that Jabez Corwin, the ancestor, entered into possession of the premises, under color of title, in 1801, and continued in

possession until 1836, claiming title ; at which time he died in possession—descent cast.  Now, this gives the occupant an absolute title in fee against the whole world, and will toll an entry. (*Smith* v. *Lorillard,* 10 *John.* 338.   1 *Cowen,* 276.   8 *Id.* 589. 9 *Wend.* 223.   *Cowen & Hill's Notes to* 2 *Phil. Ev.* 533, 309. *Code of Procedure,* § 82.   2 *R. S.* 294, § 9.   16 *Peters,* 455. 24 *Wend.* 587.   9 *Cowen,* 530.   18 *John.* 355.)   (2.)  The deed of Isaiah Tuthill to Jabez Corwin was a voluntary conveyance, and therefore binding upon the grantor and his heirs, and conclusive against all the world, except *bona fide* creditors and subsequent purchasers for a valuable consideration.  (1 *Ver.* 100, 464.   2 *Bl. Com.* 297.   1 *Atk.* 625.   4 *Kent. Com.* 462. 1 *John. Ch. R.* 240, 256, 261.   7 *John.* 161.   16 *Id.* 189.   4 *Cowen,* 216.   4 *Mass. R.* 357.   8 *Cowen,* 430.   *Jac. Law. Dic., Volun. Con.   Shep. Touch.* 221.   *Cowp.* 705.   4 *Cruise's Dig.* 517, *ch.* 27, §§ 3, 15, 27, 30, 52.)   (3.)  The deed stated in the answer from Tuthill to Corwin, of the 27th July, 1801, although not good by way of bargain and sale, for want of a valuable consideration, yet there being a good consideration makes it perfectly valid as a covenant to stand seised to uses.   (1 *Ventris,* 137.   1 *Inst.* 271, 2.   1 *Rep.* 176,   2 *Roll. Abr.* 786.   *Plowd.* 301.   *Dyer,* 169.   3 *Lev.* 306.   *Jac. Law Dic. " Uses."* 4 *Cruise's Dig. title* 32, *ch.* 10, §§ 4, 13, 15, 18, 27 ; *ch.* 19, §§ 31, 32, 33, 49, 54, 55.   2 *Bl. Com.* 297.   4 *Kent. Com.* 462.   2 *Hill,* 659.   *Vandervolgen* v. *Yates,* 3 *Barb. Ch. R.* 242.)   (4.) If the deed of Tuthill to Corwin, of the 27th July, 1801, can not stand as a covenant to stand seised to uses, it may be operative as a deed of confirmation.  (*Hob.* 277.   16 *John.* 178.   4 *Cruise's Dig. tit.* 32, *ch.* 19, § 31, *p.* 209.   2 *Bl. Com.* 325.   1 *Inst.* 295.

*Geo. Miller,* for the defendant.   I. The deed from Josiah Tuthill to Jabez Corwin is void as a bargain and sale, because it is without pecuniary consideration.  (*Jackson* v. *Alexander,* 3 *John.* 484.   *Jackson* v. *Florence,* 16 *Id.* 47.   4 *Cruise's Digest,* 127, § 22.)   II. The deed from Isaiah Tuthill to Jabez Corwin can not operate as a covenant to stand seised, because, (1.) The consideration is natural love and affection, and this is good only

between near relatives by blood. (4 *Kent's Com.* 464, 5.) The supreme court has expressly decided that a daughter-in-law can not take by deed of gift, even as trustee for the benefit of her own child, was grandson of the giver. (*Jackson* v. *Cadwell*, 1 *Cowen*, 622, 639, 643.) That was a stronger case than this, because here the deed is for the benefit of the son-in-law, there it was for the benefit of the blood of the giver. In this case the deed *expresses* the consideration of natural love and affection, but it is a *false* consideration. The grantor may have had love and affection, but it was not natural if he intended to give the property to the heirs of his son-in-law to the exclusion of the heirs of his daughter—but the old man intended no such thing. He would have been shocked if he had been told that the effect of his deed might be to exclude the children of his daughter. The enormity of such a gift would fully appear if the son-in-law had early died, childless, and his brothers had taken the land to the exclusion of the daughter. In the case of *Jackson* v. *Delancey*, (4 *Cowen*, 427, the counsel of both parties, and the court, admitted that the deed to a son-in-law could not take effect as a covenant to stand seised, because there was no consideration of blood. True, there were other considerations expressed in the deed in that case, yet if the grantee had been a son instead of a son-in-law, it is very clear that the deed would have taken effect. (*Goodale* v. *Pierce*, 2 *Hill*, 659, 652. *Jackson* v. *Swart*, 20 *John.* 85. *Jackson* v. *Staats*, 11 *Id.* 337, 351. 1 *John. Cas.* 91. 2 *Saund.* 96, *note* 1. *Bank U. S.* v. *Houseman*, 6 *Paige*, 526.) (2.) There is no consideration of marriage in the deed. The legal consideration of marriage is not the fact that the donee *has* married a blood relative of the donor, but the fact that the contract of marriage is made with reference to the gift of the land, and it goes upon the assumption that the child of the donor and his or her offspring are provided for in the arrangement. Marriage is a *valuable* consideration. (4 *Kent's Com.* 465.) In the above case (4 *Cowen*, 427,) the court said the deed lacked the consideration of marriage, yet marriage was as much expressed in that deed as in the one now before the court. The mere fact that the donee is the son-in-law or the

Corwin *v.* Corwin.

daughter-in-law of the donor does not make the consideration of marriage—if it did the questions could never have arisen which were raised in the several cases cited in 4 Cruise's Digest, p. 136, sections 14 to 17 inclusive.    In each of those cases the wife was adjudged to take a life estate in  the property which was by the same deed settled upon her offspring who were of the blood of the donor. .  III. If the deed operates as a covenant to stand seised, and vests an estate in Jabez Corwin, the father, yet it is an estate by gift, and it must descend to the heirs of the blood of the giver.    The plaintiffs being strangers, are excluded from the inheritance.    (1 *R. S.* 753, § 15.)    Isaiah Tuthill was not the ancestor of Jabez Corwin.    If the donee was sufficiently a relation of the donor to give effect to the deed, it can hardly be pretended that the donor was not sufficiently his ancestor to give effect to the statute above cited and prevent the property from going where the donor could never have intended.

BROWN, J.    The deed from Isaiah Tuthill to Jabez Corwin of the 27th July, 1801, is not good as a bargain and sale, because it is not founded upon a pecuniary consideration.  If operative to pass the title it must be as a covenant to stand seised to uses.    Natural love and affection is a sufficient consideration to support such a use; but the consideration of love and affection must be founded upon the relation of blood.    The marriage which had been consummated between the grantee Corwin and the daughter of Tuthill the grantor, is not the marriage spoken of in  the books, as the considerations which will support such a covenant.    I have not been able to find any reported case where the consideration of natural love and affection has been sustained between those who were not relations by blood.

Blackstone, in his second volume, at page 338, defines a covenant to stand seised to uses, to be a conveyance " by which a man seised of lands covenants, in consideration of blood or marriage, that he will stand seised of the same lands to the use of his wife, child, or kinsman; " and adds, " but this covenant can only operate, when made upon such weighty and interesting consid-

Corwin v. Corwin.

erations as those of blood or marriage." Such are also the authorities collected in Cruise's Digest, title 32, chap. 12, §§ 7 to 26. Kent also defines a good consideration to be one founded upon natural love and affection, between near relations by blood. (4 *Kent's Com.* 464.) In *Jackson* v. *Cadwell*, (1 *Cowen*, 622,) Mary Saunders, the daughter-in-law of the covenantor, was the covenantee, and the use was to Edward C. Saunders, jr., her son and the grandson of Edward C. Saunders, sen., the covenantor. The deed, to be effectual, must operate as a covenant to stand seized to uses. Judge Woodworth, who delivered the opinion of the court, says, at page 640, that the deed must fail as a covenant to stand seised, because there was no tie of blood between Mary Saunders and the grantor. In *Jackson* v. *Delancey*, (4 *Cowen*, 427,) the conveyance was from John Deitz to Abraham Buice his son-in-law, upon certain trusts, and the consideration was the performance of the covenants contained in the deed. The principal question upon the trial was, whether the defendant could prove a consideration different from that expressed in the deed. Mr. Justice Savage, in delivering the judgment of the court, says : "It can not operate as a covenant to stand seised to uses, for want of the consideration of blood or marriage. The grantee was the son-in-law. As I read the case of *Jackson* v. *Sebring*, (16 *John.* 515,) it asserts the same doctrine. Chancellor Kent, in delivering the opinion of the court, at page 528, uses this language : "If the deed operates at all, it must operate as a covenant to stand seised to uses, and that species of conveyance is good when made upon the consideration of blood or marriage. The consideration of natural love and affection is founded upon the ties of blood or marriage, and Davidson, the grantee, was what the law calls a stranger." To be the son-in-law is not the connection by marriage here spoken of. If the case turned upon the force of the deed as a conveyance in itself sufficient to pass the title, I should regard it inoperative for want of a sufficient consideration.

I think, however, that the judgment given at the special term must be suffered to stand, upon other grounds. The question now occurs upon the legal effect of the defendant's answer. The de-

murrer admits the facts therein stated to be true; but the truth of those facts, taken in connection with its admissions, may still be perfectly consistent with the title claimed by the plaintiffs. The complaint charges in substance, that the plaintiffs have the lawful title to the premises in controversy. This is the material allegation, and the defendant was bound to deny it if he designed to put the title in issue. "Every material allegation of the complaint, not specifically controverted by the answer, shall, for the purposes of the action, be taken as true." (*Code of Procedure*, § 168.) The answer does not specifically controvert the allegation of title in the plaintiffs, by a distinct and positive denial. It spreads out certain portions of what may be the evidence in the cause, and relies upon that as an answer. It sets out the seisin of Isaiah Tuthill, the defendant's grandfather, the deed of the 27th of July, 1801, to Jabez Corwin the father of the plaintiffs and defendant, who, it says, entered into the possession about the time of the date of the deed, and continued to have, use, and occupy the premises until September the 29th, 1836, the time of his death. It also alledges that he never had any title except such as he acquired by virtue of the deed, or as tenant by the curtesy in right of his first wife, who was the mother of the defendant, but not of the plaintiffs. And it admits that if Jabez Corwin, at the time of his death, had any interest or estate in the premises which would by law descend to his heirs generally, the plaintiffs are entitled to recover; and then alledges that the plaintiffs have no estate, right, title or interest in the lands in question, except what they derived as heirs at law of their father. The answer then submits, by way of argument, and as a conclusion of law from the premises, that Jabez Corwin had no estate or interest which would descend to the children of his second wife. The defendant was at liberty in his answer to controvert the plaintiffs' allegation of title, in express words; or to set out the existence of facts, which if true, would show that the plaintiffs had no title. By omitting to put the title in issue by a distinct and specific denial, the defendant has taken upon himself the burthen of stating facts in his answer, which taken to be true, are sufficient of themselves to show that

Corwin *v.* Corwin.

the plaintiffs have no title.   This I think he has failed to do.
Jabez Corwin was in the actual possession of the premises for the
period of thirty-five years.   It does not appear in what character
he entered, nor what estate he claimed, except so far as may be
inferred from the deed, coupled with the  possession for so great
a length of time.   It does appear, however, that he entered about
the time of the date of the deed, and in the lifetime of the grantor,
and not as tenant by the curtesy in right of his wife.   There is
no intimation of any act which recognized a title superior to his
own.   During the thirty-five years that Jabez Corwin held the
possession he also held the  deed, which although void and inop-
erative for a want of consideration, professed to convey, and was
designed by the grantor and the  grantee to convey an  estate in
fee with a  covenant of_ warranty.   If the grantee in a deed for
lands in fee enters in the lifetime of  the grantor and holds both
the lands and the deed for a period of time sufficient, if adverse,
to bar an entry, in the absence of all other evidence, the charac-
ter of his possession may be ascertained from the language of
the deed ; and if that professes to convey an absolute  estate in
fee, the inference is  inevitable, I think, that both the entry and
the possession were adverse.   The defendant, in my judgment,
should either have denied the plaintiffs' allegation of title, in ex-
press words, or in  connection with the other  facts contained in
his answer, he should have asserted that Jabez Corwin did  not
enter or claim under the deed from Isaiah Tuthill ; and that
his possession was not otherwise hostile to Tuthill and his heirs
at law.   Without some allegation of .this kind, the answer fails
to meet the principal charge contained in the complaint, and
must therefore be deemed evasive and insufficient.

The plaintiffs and  the defendants are the children and  heirs
at law of Jabez Corwin, and the possession of the lands in con-
troversy is derived from him.   The cases reported in 10 *John.*
292, 5 *Cowen,* 529, and 25 *Wend.* 389, are authorities to show
that where one takes as co-heir and tenant in common, by de-
scent, he can  not in an  action by his  co-heir prove that the
ancestor had no title.   He derives the possession from the com-
mon  ancestor, and can not, therefore, dispute the title.   He

must first give up the possession to those from whom he derives it, and then he may litigate upon the adverse title. How far the facts to be gathered from the complaint and the answer bring the present case within the scope of this rule, if I am right upon the question of the adverse possession, it is not necessary to determine. The judgment at the special term should be affirmed.

MORSE, J. concurred.

BARCULO, J. dissenting. I think the learned justice is mistaken in saying that a son-in-law is *not* a *stranger*. I had supposed that one who is not of the *blood* must be a stranger; and such I understand to be the doctrine established by the authorities. Upon this principle a deed to a daughter-in-law was held to be inoperative, as a covenant to stand seised, in *Jackson* v. *Cadwell*, (1 *Cowen*, 640.) I am unable to distinguish the case of a daughter-in-law from that of a son-in-law. Both are clearly not of the blood; and hence there can not be any *natural* love and affection to support the conveyance.

Chancellor Kent in his commentaries (4 *Kent*, 464,) says "a good consideration is founded upon natural love and affection between near relations by blood." The cases cited and examined by him in *Jackson* v. *Sebring*, (16 *John.* 515,) all tend to establish the position that the consideration of love and affection is applicable only to blood relations. It is true that he uses the word "marriage" in that case, in such connection as might lead to the mistake of supposing that marriage comes under the head of good considerations. This construction, however, can not fairly be put upon his language in the face of the well established rule that marriage is a valuable consideration. But my brethren agree with me in this view of the case, and if it were to be decided upon the point discussed by the learned justice at the special term, and principally by the counsel here, the judgment would be reversed. It is, however, supposed by my brethren, that a fatal objection to the defense may be found in the long continued possession of Jabez Corwin, the grantee. I can not concur in this view of the matter for the following reasons:

Corwin v. Corwin.

1. The mere fact of *possession* gives no title, unless it possessed an adverse character.

2. It is not stated in the answer, nor contended on the argument, that the possession was *adverse*. On the contrary, the answer expressly avers that Jabez Corwin "never had any legal or equitable title or interest in the said premises or any part thereof, except what he *acquired by virtue* of said deed or as tenant by the curtesy." This averment puts the case solely upon the validity and construction of the deed as it was at the *time of its execution*, and not as the basis of an adverse possession; and I am constrained to express my doubts of the propriety of the court raising such an objection, when it has not been presented nor argued by the parties or their counsel.

3. An adverse possession is never to be presumed or inferred, but should be distinctly averred, or found as a fact by jury, and especially is this true on *demurrer*.

4. The case does not show facts from which an adverse possession can be fairly inferred. The deed bears date 27th July, 1801. The grantor died within two months, September 23d, 1801. From that time Jabez Corwin, in right of his wife, the heir at law of the grantor, could lawfully hold possession until her death in 1822; and after that, as tenant by the curtesy till 1836. The plaintiffs, being sons of the second wife, could not have attained the age of twenty-one years before 1843. There was, consequently, no one who could dispute the possession or title of Jabez Corwin the elder, from the 27th September, 1801, to the year 1843. If, therefore, any adverse possession cuts off the defendant's title, it must be founded upon the presumption that the grantee entered into possession adversely during the two months intervening between the date of the deed and the death of Isaiah Tuthill. I think that we are not authorized to draw such an inference from the facts stated. It would, in my judgment, be much more reasonable to presume, if presumptions are to be indulged, that Isaiah Tuthill remained in possession until his death, which was sufficiently near the date of the deed, to be "about" the time. The answer does not state that he entered under the deed, but merely states that Jabez Corwin, de-

ceased, continued to have the use, occupation, and enjoyment of the premises from about the time of the date of the said deed to the time of his death; which is followed by the averment that he never had any title except what he acquired by virtue of the deed, thus negativing, as I conceive, all title by adverse possession.

My conclusion therefore is, that the judgment entered before the justice should be reversed. At all events, it seems to me that if the case is decided by the majority of the court upon the ground of adverse possession, the parties should have leave to make an issue and go to the jury on it as a question of fact. But as my brethren think otherwise, I can only thus record my dissent from their conclusions.

Judgment affirmed.

---

SAME TERM.   *McCoun, Morse, and Brown,* Justices.