White, J.
The first question arising in this case, and on which the case was determined by the Superior Court, is whether the deed in question was inoperative as a conveyance for want of a sufficient consideration.
In the common law conveyances which operate independently of the statute of uses, no consideration was necessary. Under the feudal law a consideration, it is said, was-found in the fealty and homage incident to every such conveyance; and by the conveyance the whole estate, legal and equitable, passed to the grantee. But after these incidents were abolished on a conveyance made without any consideration, or without the declaration of any use by the the grantor, it was said that the grantee took the title in trust or for the use of the grantor. 1 Spence’s Eq. Jur., s. p. 512; Dyer v. Dyer, 2 Cox, 93; 1 Sand. on Uses and Tr., s. p. 365. The legal title passed as effectually without a consideration as with it; and if there was no consideration, it became a question of intent as to the party -for whose use the conveyance was made. Thus we find this language used by Sanders in speaking of the effect of the statute of uses: “We have seen that before the act the chancery, which judged according to the intention of the parties, would have construed the possession to be in the feoffee, and the use in the feoffor.” 1 Sand. supra, s. p. 97.
To support a use declared upon the instrument which operated by transmutation of possession, as a feoffment with livery of seizen, a fine or recovery, no consideration was necessary; *“ for at law the feoffor had parted with his interest, and there was no equity ■or reason why the court of chancery should, against the expressed will of the donor, take the use from the donee and give it back to the *601 donor. In other words, uses annexed to a perfect gift, however gratuitous, were enforced. Upon an instrument which did not operate by transmutation of possession, it was different; here the person who declared the trust still retained the legal interest, so that to effectuate the trust the court must have deprived him, in effect, of his legal rights; and if there was no consideration there was nothing to call on a court of equity to interfere.” “No court of 'conscience,” says Lord Bacon, “will enforce donum, gratuitum, though the intent appear ever so clearly, where it is not executed or sufficiently passed by law.” 1 Spence’s Eq. Jur., s. p. 450.
There was nothing at common law to prevent an owner from disposing of his land by gift as freely as he could dispose of it by sale. All that was required was that he should execute his intention; if the gift consisted of a legal estate, by investing the donee with the legal title; if it was equitable in its nature, by making the transfer in accordance with the rules of equity.
Uses originally were equitable estates which were allowed to be raised and were upheld upon considerations which would not support executory contracts. And under the statute of uses the distinction was preserved between uses and equities arising under ex-ecutory contracts.
Thus it is said by Mr. Spence, that “ notwithstanding the generality of the words in the statute, namely,! contract, agreement, will, or otherwise,’ it has always been held that contracts which contemplate actual conveyances to be subsequently made, do not raise uses within the statute.” Id. s. p. 479; 1 Sand. supra., s. p. 113.
To sustain an executory contract, a valuable consideration was necessary, but a good consideration would support a use. Under the operation of the statute of uses these equitable estates were converted into legal — the statute “joining the use and the possession of the land together, so that what ^estate a man had in the use the same he had in possession.” 7 Pick. 116.
Uses as legal estates have never existed in Ohio. The statute of uses not being in force here, uses have been recognized only as equities.
The first proposition insisted upon, on behalf of the plaintiffs, is that all deeds in this state, by force of our own statute, executed and acknowledged in the mode prescribed, and duly delivered, have the same effect as conveyances at common law, and that a consideration is not necessary to their operation.
*602 One member of the court is decidedly of this opinion. My investigations incline me to the same conclusion, though I am not authorized to place the decision of the court upon this ground. The court, however, is unanimous in the opinion that a good, ascontradistinguished from a valuable consideration, is sufficient to-uphold a deed of conveyance in this state.
But does the consideration of this deed constitute a good consideration in law? If it would have been sufficient to uphold a covenant to stand seized under the statute of uses, it is sufficient to-uphold a deed executed in conformity to our law.
“Uses,” says Sanders, “may be raised either upon a pecuniary consideration, or upon what is called a good consideration, which is that of blood or marriage. Whatever be the form of the conveyance creating and transferring a use upon the former consideration, it is a bargain and sale, and must he enrolled as such; but. conveyances raising upon or by virtue of the latter, are termed covenants to stand seized, and they are not within the words of the statute of enrollments, nor within the policy of it; because the consideration of blood and marriage is of a public nature.” “ The consideration of this conveyance is the foundation of it.” “ Uses-can only be raised upon a covenant to stand seized in consideration of blood or marriage.” 2 Sand. on Uses and Tr. (side) 96, 97.
In this country, however, it is proper to remark, uses have-*been allowed to be raised upon a valuable consideration. 1 Johns. Cas. 96, 97; 4 Mass. 135.
In Jacob’s Law Dictionary, title Covenant, it is, said: “There are no considerations now at this day, to raise uses upon cove-ants, but natural love and affection, which is for the advancement, of blood; or consideration of marriage, which is the joining of blood and marriage together.” 2 Jacob’s Law Dic. 129.
In Sheppard’s Touchstone, 511, 512, it is said that if one “in. consideration of nature, kindred, blood, or marriage, with one’s-self, or any of his blood, . . . covenant to stand seized to the use of himself, his wife, children, brothers, sisters, or cousins, or-their wives, these are good considerations, and the uses and estates-thereupon and thus raised and made are good.”
The foregoing refers to existing relations among kindred, and to existing marriages with the kindred of the covenantor, and is not. limited to marriages to he had on the faith of, or in consideration of the covenant. This is apparent from the context, and from the- *603 difference, the author remarks, that is to be observed between the: case where the covenant is in consideration of a marriage “ to be had,” and the other cases.
Thus in Bacon’s Abridgment, speaking of marriage as a consideration, it is said: “With respect to considerations of marriage: a man may covenant to stand seized to the use of A, his wife, and the consideration that she is his wife, will raise a good estate-to her, for this is a good consideration in law.” “Likewise, a man may covenant to stand seized to the use of A, the wife of his brother, in consideration that she is the wife of his brother, and this shall raise a good estate to her; for the love which he bears-toward his brother, extends in his right to his wife.” 10 Bacon’s Abr. (Bouvier’s), title Uses and Tr. (E.) Cov. to Stand Seized, p. 142; 2 Comyn’s Dig. Cov. (G. 3) ; 1 Spence’s Eq. (side) 450.
Again, in Comyn’s Digest (vol. 2, p. 277, tit. Cov. (G. 3), under the head, “ upon what consideration ” the covenant maybe raised, it is-said: “ If, in consideration of affection to his brother, he covenants to stand seized to the use of his brother and his wife for their lives, this extends to the wife *of his brother. So, in consideration of affection to his son, extends to the wife of his son.”
Here the marriages were existing at the time of the creation of the estate; there was no relationship by blood from which natural' love and affection could arise; but there was love and affection which was recognized as sufficient, arising from the marriage of the donees to the blood of the covenantor; in the first case, to thecovenantor himself: in the second, to his brother and to his son.
That marriage as a consideration is not limited to contemplated marriages with the kindred of the covenantor, is clearly the view taken in Bell v. Scammon, 15 N. H. 382, 395, and in Gale v. Coburn, 18 Mich. 397, 401. In both cases the deeds were made to sons-in-law, and they were declared to operate as covenants to stand seized,, though the daughters had died, but leaving issue of the marriage, before the deeds were made. In the latter case it was held that the deed could operate in no other way, and it was upheld by the-court solely on the ground of the marriage and the consanguinity of the children of the covenantee to the covenantor.
In Oliver’s Conveyancing, page 308, the rule is thus stated:
“As respects the consideration, uses by this .conveyance [covenant, to stand seized] in consideration of love and affection, may well, be raised in favor of a wife, son, daughter, mother, brother, cousin,. *604 :an intended wife, a son’s, or brother’s, or cousin’s wife, a daughter’s husband, etc., or any near relations of the blood of the covenantor.; or in consideration of marriage, may be raised in favor of any one married to one of the blood of the covenantor, or any one intending to be married to a cousin of the covenantor, if the marriage takes place.”
Washburn, in his work on Real Property (vol. 2, s. p. 102), in-speaking of uses prior to the statute 27 Hen. VIII., says: “Considerations were then, as now, divided into two classes — good and valuable. A good consideration was one raised by the relationship -of marriage, or of blood within the degrees of nephew or cousin.” And in speaking of deeds under the statute of uses, he says (Id. s. p. 606) : “ In covenants to *stand seized, it [the consideration] consisted of relationship by consanguinity or affinity.”
The term affinity, as here used, is to be understood in a restricted sense, and as applying only to cases where the relationship arises from a marriage to the blood of the covenantor within the requisite degrees of consanguinity, to which the covenantee or donee is a party.
Mere affinity was not sufficient. It must have arisen from a marriage to which the donee was a party. The doctrine seems to have been founded on the general desire men have to perpetuate their blood, and to make provision for their kindred. The former could be done legitimately only through marriage. 1 Plow. 298. Marriage to the blood was therefore put on the same footing with blood; and both were regarded as of a public nature, and sufficient as a consideration to uphold a use otherwise perfect.
There would appear to be no good reason for making the application of the principle depend upon the sex of the donee. And if the fact of the donee’s being a daughter-in-law, or the wife of a brother, was a sufficient consideration to make a “ use ” effective to them, it is not perceived why it would not have been equally so when made to a son-in-law.
Marriage to he had constitutes a valuable consideration, and if afterward consummated, is sufficient to sustain'a purely executory promise, and to authorize its enforcement by appropriate remedy, either at law or in equity,
But an existing marriage, though it be one to which the promisor is a party, can have no such effect. Being only a good consideration, it is not sufficient to authorize the enforcement of an execu *605 tory agreement against an unwilling promisor. Adams Eq., s. p. 78, But the deed in the present ease is not in any respect executory. Whatever effect it is entitled to pertains to it as an executoryconveyance.
Its execution is perfect in form; it contains apt words of conveyance even without the words “ bargain and sell;” it was duly delivered; the grantee entered into possession; and the intent to-pass the title without any further act on the part of either party, is clear. If it operates at all, it is an ^executed instrument; if it fails to operate, it is for want of a consideration.
No question of equity arises in determining the effect of the-deed. The question is purely a legal one. The case does not belong to the class of intended gifts imperfectly executed, which undercertain circumstances, when founded on meritorious consideration,, are enforced in equity in favor of the intention of the donor. Adams’ Eq., s. p. 98.
If the deed had been made to a brother or to a son, or directly to the daughter in consideration of blood, it would -have taken-effect as a legal conveyance, and the title would have passed beyond recall. But an agreement, on the same consideration, to make the deed, could not have been enforced against the donor, either at law or in equity.
A good consideration which would have been sufficient to uphold a use before the statute of uses, or a covenant to stand seized:, after the statute, must not be confounded with the class of meritorious considerations, as recognized and understood in modern-equity.
This class of considerations, it is said (Adams’ Eq., s. p. 97, 98), “ is confined to the three duties of charity, of payment of creditors, and of maintaining a wife and children; and under this last head-are included provisions made for persons, not being children of the party promising, but in relation to whom he has manifested an intention to stand in loco parentis, in reference to the parental duty of making provision for a child.”
The efficacy of this description of consideration is not coincident with blood or marriage. Parents and collateral kindred seem not to be within the consideration, while its influence extends in favor of strangers to the blood of the donor, as to whom he stands in-, the place of a parent.
The suggestion, therefor e, made during the argument of this *606 •case, that to sustain a deed of conveyance in this state, requires -either a valuable, or what is regarded in equity as a meritorious consideration, can not be maintained without excluding considerations as insufficient to uphold conveyances here which would have been sufficient to support uses, and conveyances by way of ■covenant under the statute of uses.
*Uses did not arise on executory agreements. It was necessary that they should have been perfectly declared, and that future acts of the donor would not be required to perfect them. They were in the nature of a perfected or final trust in equity.
The question is not whether this deed can operate here as a cov■enant to stand seized, but whether the consideration upon which it is founded, would have constituted a sufficient consideration to make that mode of conveyance effective under the statute of uses. If it would, the deed being in other respects executed in conformity to the statute, the' consideration is sufficient to uphold it, and ■the legal title passes here as effectually as it would have done in England under the statute of uses.
That the consideration would have been sufficient to support a covenant to stand seized, appears from the authorities already referred to, and such being the fact (assuming a consideration to be required), the deed takes effect as a voluntary conveyance fully ■executed by the donor.
In New York, the rulings have been very stringent against upholding deeds founded upon considerations not sufficient to support .a deed of bargain and sale under the statute of uses. The first and leading case is Jackson v. Sebring, 16 Johns. 515, in which it was held that a conveyance to a stranger in trust for one within the consideration of blood, would not operate as a covenant to .stand seized, though it was admitted the conveyance would have been made valid if made directly to the beneficiary. And Jackson v. Cadwell, 1 Cow. 622, was decided upon the same principle.
But the correctness of the principle upon which these cases were decided was denied by the court of exchequer, in Doe d. Lewis v. Davies, 2 Mees. & Welsb. 503-515. In this case the opinion was delivered by Baron Parke; and the older authorities were reviewed, and it was held that a covenant with a stranger in trust for one in whose favor there existed the requisite consideration, was valid, and .operated as a conveyance.
In Jackson v. Delancey, 4 Cow. 431, the deed was held not to *607 operate as a covenant to stand seized, because the consideration shown upon its face was not blood or marriage. It *is true it was made to a son-in-law, but the sole consideration expressed was the “performances ” specified in the deed; and the attempt to prove by parol other considerations of a different nuture from that expressed, was not allowed.
In Roberts v. Roberts, 22 Wend. 140, it was held that a “prospective marriage" isa sufficient consideration to support a covenant to stand seized where the marriage is subsequently solemnized. That was the character of the consideration in the deed then before the court. But it is clear the court did not mean to say that a marriage consummated would not have been sufficient. This is apparent from the language of Cowan, J., on page 144, where he says: “ Marriage, as we said, is an equally good consideration with blood; and it may be a marriage to be solemnized thereafter, which may be shown in proof to have been actually solemnized, as was done here.”
The decision in Corwin v. Corwin, 2 Seld. 342; S. C., 9 Barb. 219, it is admitted, is opposed to the conclusion arrived at in the present case. The deed in that case was made to a son-in-law. The consideration expressed was as follows: “ In consideration of natural love and affection which I have and do bear unto my son-in-law, J. C., and for the better maintenance and livelihood of the said J. C.” Marriage was not expressly stated as a consideration.
The ground of the decision was that marriage, as a consideration for a conveyance, by way of covenant to stand seized, has reference only to marriage “ to be had." Id. 344.
Marriage to be had constitutes a valuable consideration, and, as already remarked, is sufficient to support and to warrant the enforcement of a mere executory agreement. Marriage, in the doctrine of uses, is classed with blood as a good consideration.
It is not required that the donor or covenantor should be a party to the marriage. And in respect to whether the marriage be existing or only prospective, no distinction appears to be made between a marriage to which the covenantor is a party, and one to which he is not. If a marriage “ to be had ” alone constituted a consideration, a man could not raise a use in favor of his wife, or covenant to stand seized to her *use, unless in pursuance of an ante-nuptial agreement. No such restriction is recognized in the authorities already quoted, and we are unwilling to adopt the prin *608 ciple upon which Corwin v. Corwin was decided as a rule in this state.
As to the other questions, and which a contrary holding as to the validity of the deed would have rendered immaterial, the case is continued.
Hat, C.- J., and Brinkerhorr, Scott, and Welch, JJ., concurred.