LYDIA EYSAMAN, RESPONDENT, *v.* JOSEPH H. EYSA-
MAN, APPELLANT.

*Reservation — it cannot operate in favor of a stranger to the deed — A covenant to
stand seized was not abolished by the Revised Statutes — When an agreement to con-
vey land will be enforced by the court — Parol evidence — admissible to show the rela-
tionship between grantor and grantee — but not to cut down a life estate created by
a deed — Notice to quit — when unnecessary.*

On March 24, 1874, William Eysaman, the plaintiff's husband, executed and
delivered to the defendant a deed, purporting to be made in pursuance of a
consideration of $1,000, between " William Eysaman and Lydia, his wife, of
the first part, and Joseph H. Eysaman of the second part," whereby he granted
to the defendant certain land. Immediately after the description of the land
were added the following words : '' The parties of the first part reserve to
themselves the right of controlling said land and all the benefits of said land
during their natural lives," and after a covenant of quiet and peaceable posses-
sion were added the words, " with the reservation therein claimed." The
plaintiff neither executed nor acknowledged the deed. Upon the trial of an
action of ejectment, brought by the plaintiff after the death of her husband,
to recover possession of the land, it was shown by parol that no money con-
sideration was paid, and that the defendant was a nephew of the plaintiff's
husband.

*Held,* that the clause reserving to the grantors the right of controlling the lands
and all the benefits thereof, could not operate as a reservation in favor of
the plaintiff, because she was not a party to the deed.

That as the deed contained all the elements essential to constitute a covenant to
stand seized on the part of the grantee, and as the Revised Statutes had not
abolished that mode of conveying land, it operated to create a use for life in
favor of the plaintiff, which use was by virtue of the Statute of Uses (1 R. S.,
727, § 47, and 1 R. S., 728, § 49), transformed into an estate for life in the
land.

That even if this were not so, the clause would be regarded as an agreement by
the grantee to convey a life estate to the plaintiff, enforceable in a court of
equity, and which might be enforced in this action by adjudging the title to
be in the plaintiff and awarding to her the possession, under the rule that
equity will regard that as done which ought to be done.

That parol proof of the relationship existing between the grantor and the
defendant, was properly admitted to show that the requisite consideration
existed to support the deed.

The defendant offered to show by parol evidence that, as part of the considera-
tion of the deed, it was agreed that he should take immediate possession of
the land and have the use and profits thereof, and support and maintain the

grantor and his wife in his, the defendant's, family and furnish to them certain rooms in the house upon the land conveyed, for their exclusive occupancy, and that he had performed his agreement.

*Held,* that the evidence was properly rejected, as it could not have the effect to extinguish the life estate of the grantor, much less that of his wife, who was not a party to the agreement.

When the relation of landlord and tenant does not exist between the parties, and the only issue between them is as to the title, no demand or notice to quit need be made or given before commencing an action of ejectment.

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee. The action was one of ejectment. On 24th March, 1874, William Eysaman, the husband of the plaintiff, was seized in fee of the lands in suit, and on that day he executed and delivered to the defendant a conveyance of said lands, purporting to be made between "William Eysaman and Lydia his wife, of the first part, and Joseph H. Eysaman of the second part" (but not executed by the said Lydia), whereby he granted the said land to the defendant, describing the same. Immediately after the description, the conveyance contained the following words, namely: "The parties of the first part reserve to themselves the right of controlling said land and all the benefits of said land during their natural lives." The conveyance contained a covenant of warranty of quiet and peaceable possession in the usual form, except that the following words were added at the end thereof, namely: "With the reservation therein claimed." The conveyance was drawn by a justice of the peace, and was not witnessed or acknowledged until 19th September, 1877, when it was witnessed and was acknowledged by the said William. The plaintiff never executed or acknowledged it. The consideration expressed in the conveyance was $1,000, but it was proved that no money consideration was paid or agreed to be paid. The defendant was a son of a brother of William. The grantor and his wife had no children. William died on 29th September, 1877. On 2d April, 1878, the defendant then being in possession of said land, the plaintiff demanded possession, and he refused to surrender it.

The referee held that upon the death of her husband, the plaintiff became seized, in law, of an estate in said land for the term of her natural life, and was entitled to the possession of the same by

force and operation of the said conveyance, and ordered judgment in favor of the plaintiff for the recovery of the possession.

*Link & McEvoy*, for the appellant.

*Geo. W. Smith*, for the respondent.

SMITH, J. :

The plaintiff claims a life estate in the land in controversy by the operation of the clause in the deed executed by her husband to the defendant, reserving to him and herself " the right of controlling said land and all the benefits of said land during their natural lives." The right thus reserved is quite as comprehensive at least as the right to the " rents and profits," and carries with it the right to the exclusive use and possession of the land during the lives of the beneficiaries. The clause referred to was probably good as a reservation to the grantor William Eysaman, but it cannot operate by way of reservation or exception in favor of the plaintiff, she being a stranger to the deed and to the estate conveyed by it. (*Craig* v. *Wells*, 11 N. Y., 323, and cases cited.) Perhaps the clause is good as an agreement on the part of the grantee to convey the use for the benefit of the wife after the death of the grantor, which a court of equity would execute. (*Sherman, Admr.*, v. *Estate of Dodge*, 28 Vt., 26.) Before our Revised Statutes the deed would have oper ated as a covenant to stand seized to the plaintiff's use within the principle of *Jackson ex dem. Wood* v. *Swart* (20 Johns., 85) and the cases there cited, and in such case the use would have been executed by the statute and turned into a legal estate. The grantee being the son of a brother of the grantor, there is the requisite considera- tion of blood to support the conveyance, and although the clause is inartificial, it clearly manifests the intention of the parties that the grantor and his wife should have the control and the profits of the land during their lives. The deed has all the elements of a covenant to stand seized, and it may be assumed, therefore, that, as the plaintiff has survived her husband, she has a legal estate for life in the land conveyed, provided that mode of conveyance has sur- vived the revision of 1830 and may be resorted to at the present time. Upon that point there is no express adjudication that we are aware of, and very little has been said about it by text writers.

In Willard on Real Estate (p. 440) it is said that the conveyance to stand seized does not exist in this State, but no authority is cited. Chancellor KENT, in his commentaries (vol. 4 [7th ed.], p. 493), says that "covenants to stand seized owe their efficacy to the statute of uses, and in New York the statute of uses is abolished, and no mention is made of the conveyance." "But," he continues, "if the covenant to stand seized be founded on the requisite consideration it would be good as a grant, for there could be no dispute about the intention; and it is admitted that, in a covenant to stand seized, any words will do that sufficiently indicate the intention." The annotator of the eleventh edition of the commentaries says, in a note to the part of the text above quoted, that "the remark that the statute of uses is abolished in New York appears to be unguarded." "Uses and trusts," he says, "are abolished, except in the specified cases. But this abolition does not leave the estate in the grantee under a conveyance to uses. On the contrary, the policy of the statute of uses which was directed against passive trusts is greatly enlarged by new and appropriate enactments, vesting the title in the beneficiary in all cases when it is the intention of the conveyance to give him the right to the possession and profits of the land." The learned annotator, as chief judge of our Court of Appeals, expressed similar views in the opinion delivered by him in the case of *Downing* v. *Marshall* (23 N. Y., 377, 380). In *Lossee* v. *Ellis* (13 Hun, 635) it was claimed on the part of the defendant that the instrument there in question, which was executed in 1850, created a title by way of covenant to stand seized. It does not appear to have been suggested by any one in that case that an estate cannot be conveyed in that mode since the Revised Statutes; but the claim of the defendant was defeated, on the ground, among others, that there was no consideration of blood or marriage to support the instrument as a covenant to stand seized.

The revision of 1830 was designed to restore the statute of uses to what it was originally intended to be; but the design was sought to be accomplished, not by abolishing all the forms of conveyance that were employed after the adoption of that statute to create uses, but by converting all formal uses and trusts into legal estates in the beneficial owner. Section 49 of the statute of uses and

trusts, which provides that every disposition of lands shall be directly to the person in whom the right to the possession and profits shall be intended to be vested, contained, when it was reported by the commissioners of revision to the legislature, a provision declaring every disposition contrary to its provisions to be void. (Report of Comrs., vol. 3, p. 30, § 50, and note to same.) But the legislature rejected that provision and put the section in its present shape. The form of conveyance known as bargain and sale (which differed theoretically from a covenant to stand seized only in the nature of the consideration required to support it) (3 Wash. on Real Property, 354), and that of lease and release, each of which created a use, and the effect of which in passing the legal estate was founded on the statute of uses, were expressly retained in the revision as grants. (1 R. S., 739, § 142.) None of the other modes of conveyance which owed their efficacy to that statute are mentioned in the revision. Deeds to lead uses and deeds to declare uses, which were ordinarily employed in connection with fines and recoveries, have been of no practical utility since fines and recoveries were abolished (2 R. S., 343, § 24); but Willard, in his treatise on real estate, expresses the opinion that they are still admissible in certain cases. (P. 444.) We are not aware of any provision of the Revised Statutes by which the covenant to stand seized is abolished or made ineffectual, expressly or by necessary implication. It is in the nature of a will, and as a means of carrying out arrangements among near relatives it is a useful conveyance. The fact that there is no instance in the books of such a conveyance, since the Revised Statutes, is perhaps some evidence that the profession regard it as obsolete; and yet its disuse may be owing to the fact that there has seldom been an occasion for resorting to it rather than to a will or a grant with valid reservations. The intention in this case that the wife, surviving her husband, should have a life estate is clear, and the intention is to be carried out if it can be done consistently with the rules of law. On the whole we incline to the opinion that the covenant to stand seized, is still a valid mode of conveyance, and that the deed before us is effectual as a grant of a life estate to the plaintiff under the statute executing the use (1 R. S., 727, § 47; 728, § 49), or if not so, that the clause referred to may be regarded as an agreement by the grantee

of the fee, to convey a life estate to the plaintiff, which a court of equity will enforce and which may be enforced in this action by adjudging the title to be in her, upon the rule that equity will regard that as done which ought to be done, and awarding to her the possession. (Code Civ. Pro., § 1207.)

The position of the defendant's counsel, that it was error to admit parol proof of the relationship which the grantee bore to the grantor, in order to show the requisite consideration of blood, is untenable. (*Rogers* v. *Eagle Fire Ins. Co.*, 9 Wend., 628, 629 ; *Wallis* v. *Wallis*, 4 Mass., 135 ; *Brewer* v. *Hardy*, 22 Pick., 376 ; *Goodell* v. *Pierce*, 2 Hill, 659 ; *Bedell's Case*, 7 Co., 40.)

At the trial the defendant offered to show by parol, that as a part consideration of the deed, and at the time of making it, the grantor and the grantee agreed in substance that the defendant was to take immediate possession of the land and have the use and profits thereof, and support and maintain the grantor and his wife in the defendant's family, and furnish them certain rooms in his dwelling house on the land conveyed, for their exclusive occupancy, and that the defendant had performed such agreement. The offer was properly excluded. The alleged agreement being verbal, could not have the effect to extinguish or cut down the life estate of the grantor, much less that of his wife, who was not a party to the agreement. In *Colby* v. *Colby* (28 Verm., 10), a father deeded to his son as a compensation for his services, a piece of land, with a condition in the deed that the grantor was to have " the use and improvement" of the premises during his life, if he should have occasion therefor and should choose to use them. In that case, as was offered to be shown in this, the grantee at the instance of the grantor, had managed the farm and supported the grantor and wife in his family. It was held that the grantor retained a life estate in the premises, which was extinguishable only by deed ; and which, after a voluntary surrender of the possession of the premises to his son, but without any writing, he could again avail himself of whenever he chose. So far as the evidence offered in the case at bar tended to show an additional consideration for the deed, it was immaterial ; and inasmuch as it tended to vary the terms of the deed and cut down the estate of the grantor and his wife, it was inadmissible.

The case is not one, as the appellant insists, in which extraneous circumstances may be resorted to in order to ascertain the intention. The clause relied on by the plaintiff is unambiguous, as is the entire deed.

The point is made that no sufficient notice to quit was shown. None was necessary. The relation of landlord and tenant was not shown to have existed between the parties, and the only issue between them was as to the title. In such case, no demand or notice is requisite. ( *Wood* v. *Wood*, 18 Hun, 351.)

If the views above expressed are correct, they dispose of the numerous exceptions taken to the rulings of the referee upon the admission or rejection of evidence, and to his refusals to find as requested.

The judgment should be affirmed with costs.

TALCOTT, P. J., and HARDIN, J., concurred.

Judgment affirmed.